15 CV 8456 (CM)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JONATHAN HARRIS,

                                        Plaintiff,

              -against-

CITY OF NEW YORK; Detective BRIAN TAYLOR, Shield No.
4438; Police Officer NEIL MAGLIANO, Shield No. 2766; Police
Officer SEAN NOCE, Shield No. 31328; and JOHN and JANE
DOE 1 through 10, individually and in their official capacities (the
names John and Jane Doe being fictitious, as the true names are
presently unknown),

                                        Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, New York 10007*
*Of Counsel: Paul H. Johnson*
*Tel: (212) 356-2656*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... II

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ....................................................................................... 2

POINT I DETECTIVE BRIAN TYALOR, DETECTIVE NEIL MAGLIANO AND POLICE
OFFICER SEAN NOCE ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S
FALSE ARREST, FALSE IMPRISONMENT AND DENIAL OF A RIGHT TO A FAIR
TRIAL CLAIMS.......................................................................................................... 8

       A. Legal Standard for Summary Judgment................................................. 8

       B.  Legal Standard for Qualified Immunity ............................................... 9

       C.  Legal Standard for Probable Cause for Arrest.................................... 11

       D.  Legal Standard for Denial of a Right to a Fair
          Trial............................................................................................... 13

       E.  Criminal Possession of a Weapon in the Fourth
          Degree.......................................................................................... 14

       F.  Racketeer Influence and Corrupt Organization
          Act................................................................................................ 17

POINT II DEFENDANT CITY OF NEW YORK SHOULD BE GRANTED SUMMARY
JUDGMENT ON PLAINTIFF'S CLAIM FOR MUNICIPAL LIABILITY .............................. 21

POINT III PLAINTIFF'S CASE SHOULD BE DISMISSED FOR FAILURE TO PROSECUTE
.................................................................................................................................... 22

CONCLUSION........................................................................................................... 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Brown v. City of New York,
   No. 14-CV-5372 (BMC), 2014 U.S. Dist. LEXIS 181736 (E.D.N.Y. Dec. 23,
   2014) ...................................................................................................................14

Celotex Corp. v. Catrett,
   477 U.S. 317 (1986).............................................................................................9

Cerrone v. Brown,
   246 F.3d 194 (2d Cir. 2001)...............................................................................11

Cifarelli v. Village of Babylon,
   93 F.3d 47 (2d Cir. 1996)......................................................................................8

City & Cnty. of San Francisco v. Sheehan,
   135 S. Ct. 1765 (2015).....................................................................................10, 11

City of Los Angeles v. Heller,
   475 U.S. 796,799 ...............................................................................................21

Devenpeck v. Alford,
   543 U.S. 146 (2004)............................................................................................12

Dwares v. City of New York,
   985 F.2d 94 (2d Cir. 1993)..................................................................................22

Escalera v. Lunn,
   361 F.3d 737 (2d Cir. 2004)................................................................................13

Gabai v. Jacoby,
   800 F. Supp. 1149 (S.D.N.Y. Aug. 6, 1992)........................................................9

Garcia v. Does,
   779 F.3d 84 (2d Cir. 2015)..................................................................................17

Horvath v. City of New York,
   No. 12-CV-6005 (RJD) (MDG), 2015 U.S. Dist. LEXIS 51029 (E.D.N.Y.
   Apr. 17, 2015) ....................................................................................................13

**Cases**                                                                 **Pages**

Illinois v. Gates,
      462 U.S. 213 (1983)............................................................................................12

Jaegly v. Couch,
      439 F.3d 149 (2d Cir. N.Y. 2006)............................................................12, 13, 19

Jaramillo v. Weyerhaeuser Co.,
      536 F.3d 140 (2d Cir. 2008)...................................................................................9

Jermosen v. Coughlin,
      877 F. Supp. 864 (S.D.N.Y. Mar. 3, 1995).............................................................9

Jovanovic v. City of New York,
      486 Fed. Appx. 149 (2d Cir. 2012)......................................................................13

Kinsella v. Rumsfeld,
      320 F.3d 309 (2d Cir. 2003)...................................................................................8

Kinzer v. Jackson,
      316 F.3d 139 (2d Cir. 2003).................................................................................11

Markman v. City of New York,
      2015 U.S. App. LEXIS 19087 (2d Cir. Nov. 2, 2015).......................................11, 13

Martinez v. City of New York,
      No 06 Civ. 5671 (WHP), 2008 U.S. Dist. LEXIS 49203 (S.D.N.Y. June 27,
      2008), aff'd, Martinez v. Muentes,340 Fed. Appx. 700 (2d. Cir. July 27, 2009)...................21

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
      475 U.S. 574 (1986)...............................................................................................8

Michigan v. DeFillippo,
      443 U.S. 31 (1979)...............................................................................................12

Miloslavsky v. AES Eng'g Soc'y, Inc.,
      808 F. Supp. 351 (S.D.N.Y. 1992), aff'd, 993 F.2d 1534 (2d Cir. 1993)...............12

Oklahoma v. Tuttle,
      471 U.S. 808 (1985).............................................................................................21

People v. Ramirez-Portoreal,
      88 N.Y.2d 99, 666 N.E.2d 207, 643 N.Y.S.2d 502 (1996)....................................15

Pierson v. Ray,
      386 U.S. 547 (1967).............................................................................................12

**Cases**                                                                 **Pages**

Ricciuti v. New York City Transit Auth.,
    124 F.3d 123 (2d Cir. 1997)...............................................................12

Singer v. Fulton County Sheriff,
    63 F.3d 110 (2d Cir. 1995)................................................................11

Small v. Bud-Kworldwide, Inc.,
    895 F. Supp. 2d 438 (E.D.N.Y. 2012) .............................................15

Stephens v. Venettozzi,
    2016 U.S. Dist. LEXIS 24123 (S.D.N.Y. Feb. 24, 2016) ..............11

Stephenson v. John Doe, Detective,
    332 F.3d 68 (2d Cir. 2003)......................................................9, 16, 19

United States v. 4003-4005 5th Ave.,
    55 F.3d 78 (2d Cir. 1995).................................................................23

United States v. Abney,
    2003 U.S. Dist. LEXIS 15055 (S.D.N.Y. Aug. 28, 2003) ..............19

United States v. Rylander,
    460 U.S. 752 (1983).........................................................................22

Walczyk v. Rio,
    496 F. 3d 139 (2d Cir. 2007)............................................................19

Weyant v. Okst,
    101 F.3d 845 (2d Cir. 1996).......................................................11, 12

Williams v. City of New York,
    2012 U.S. Dist. Lexis 21729 (S.D.N.Y. Feb. 17, 2012) ................16

Williams v. Savory,
    87 F. Supp. 3d 437 (S.D.N.Y. 2015).................................................23

**Statutes**

18 U.S.C. § 1961..............................................................17, 18, 20, 21

42 U.S.C. § 1983.......................................................................1, 10, 13

N.Y. Penal Law § 10.00(13)...................................................................15

N.Y. Penal Law § 265.01............................................................14, 15, 16

**Cases**                                                                                                  **Pages**

**Other Authorities**

U.S. Const. amend. V..........................................................................................2,7,22,23

U.S. Const. amend. VI .................................................................................................14

Fed. R. Civ. P. 56(a)......................................................................................................8

Press Release, Department of Justice, United States Attorney for the Southern
      District of New York, (December 9, 2015),48 Members And Associates Of 2
      Rival Bronx Street Gangs Charged In Federal Court With Racketeering
      Offenses, Including 3 Murders, Narcotics Trafficking, And Firearms Offenses
      (available at https://www.justice.gov/usao-sdny/pr/48-members-and-
      associates-2-rival-bronx-street-gangs-charged-federal-court-racketeering)........................7, 18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

JONATHAN HARRIS,

                                    Plaintiff,

                    -against-                                          15 CV 8456 (CM)

CITY OF NEW YORK; Detective BRIAN TAYLOR,
Shield No. 4438; Police Officer NEIL MAGLIANO,
Shield No. 2766; Police Officer SEAN NOCE, Shield
No. 31328; and JOHN and JANE DOE 1 through 10,
individually and in their official capacities (the names
John and Jane Doe being fictitious, as the true names are
presently unknown),

                                    Defendants.
------------------------------------------------------------------------X

## PRELIMINARY STATEMENT[1]

   Jonathan Harris, plaintiff, brings this action alleging various violations of his

federal constitutional rights. In the Amended Complaint dated   March 1, 2016 (Amended

Complaint, "Am. Cmpl." annexed to the Declaration of Paul H. Johnson dated June 1, 2016

("Johnson Decl."), Exhibit "A"), plaintiff alleges federal claims under 42 U.S.C. § 1983 for false

arrest/false imprisonment, denial of the right to a fair trial and bias based profiling.

---

[1] The facts set forth herein are based upon plaintiff's admissions in his deposition and Amended
Complaint, as well the indictment, criminal complaint and arrest reports of plaintiff. Defendants
in no way agree that probable cause for plaintiff's arrest and criminal prosecution is limited to
what is set forth herein, but for purposes of this motion the facts are limited to plaintiff's version
of events and the related charging  documents.

Plaintiff's claims for false arrest and false imprisonment should be dismissed because there was at least arguable probable cause for plaintiff's arrest, entitling Taylor, Magliano and Noce to qualified immunity. Plaintiff's claim for denial of a right to a fair trial must fail because plaintiff has failed to plead any facts to suggest he suffered a deprivation as a result of any alleged evidence fabricated by defendants. Plaintiff's purported claim for bias based profiling should be dismissed because there was no underlying constitutional violation and no plausible facts alleged to demonstrate municipal liability. Finally, plaintiff's claims should be dismissed for failure to prosecute because plaintiff invoked his right against self-incrimination under U.S. Const. amend. V ("Fifth Amendment") in response to material questions posed by defendants during his deposition, thus frustrating the prosecution of his case by failing to provide evidence in support of his claims.

## STATEMENT OF FACTS

Plaintiff Jonathan Harris's home address is 331 East 146th in the Bronx, New York. (Deposition of Jonathan Harris, dated May 18, 2016, ("Harris Dep.") annexed to the Declaration of Paul H. Johnson dated June 1, 2016 ("Johnson Decl."), Exhibit "B" at 4:9-11). On April 10, 2015 at approximately 9:45 p.m., within the confines of the 40th Precinct, plaintiff Jonathan Harris was arrested for possession of a dangerous weapon at the southeast corner of College Avenue and East 148th Street in the Bronx, New York in the vicinity of P.S. 18 Park. (Harris Dep., Johnson Decl., Exhibit "B" at 29:9-18; Arrest Report for Jonathan Harris, Arrest

2

Number B15621231 ("Harris Arrest Rep. 2"), Johnson Decl., Exhibit "D" at Bates Stamp No. DEF000013).

        On May 7, 2015, plaintiff traveled to the vicinity of 217 West 63rd Street in New York, New York to visit a friend. (Harris Dep., Johnson Decl., Exhibit "B" at 41:8-18). At approximately 11:36 p.m. on May 7, 2015, police officers were called to the area of West 64th Street and West End Avenue in New York, New York to investigate a 911 call stating that a black male, approximately 5 feet 8 inches tall, wearing a black hoody and black sweatpants was in a park near the Amsterdam Houses with a gun in his waistband. (Sprint Report, New York City Police Department ("Sprint Report") for May 7, 2015, Johnson Decl., Exhibit "M" at Bates Stamp Nos. DEF000084 through DEF000085). Plaintiff's arrest report stated plaintiff is a black male and at the time of his arrest the arrest report stated he was wearing black sweatpants and a black jogging jacket and is approximately 5 feet 9 inches tall. (Arrest Report No. M15633672, for Jonathan Harris, ("Harris Arrest Rep. 1"), Johnson Decl., Exhibit "C" at Bates stamp No. DEF000002). Plaintiff testified that prior to his encounter with police he was standing next to two females. (Harris Dep., Johnson Decl., Exhibit "B" at 52:20-25). At approximately 11:55 p.m. plaintiff was in a courtyard in the vicinity of 217 West 63rd Street when he was approached by a police officer. (Harris Dep., Johnson Decl., Exhibit "B" at 46:9-11; Arrest Report No. M15633672, for Jonathan Harris, ("Harris Arrest Rep. 1"), Johnson Decl., Exhibit "C" at Bates stamp No. DEF000001). Plaintiff testified he recognized the police officer having previously seen the officer in the vicinity of 146th Street and College Avenue in the Bronx. (Harris Dep.

Harris Dep., Johnson Decl., Exhibit "B" at 46:12-25). The police officer stated that he knew plaintiff. (Harris Dep., Johnson Decl., Exhibit "B at 48:5-8).

After speaking with the police officer, plaintiff began to walk toward the apartment building. (Harris Dep., Johnson Decl., Exhibit "B' at 49:3-5). The police officer stopped plaintiff. (Harris Dep., Johnson Decl., Exhibit "B' at 49:4-5). The police officer walked over to inspect a jacket approximately 10 to 15 feet away from plaintiff. (Harris Dep., Johnson Decl., Exhibit "B" at 49:10-12; 51:1-3). The jacket was hanging on a fence. (Harris Dep., Johnson Decl., Exhibit "B" at 49:13-14). The fence was 10 to 15 feet away from plaintiff. (Harris Dep., Johnson Decl., Exhibit "B" at 49:10-12). There was no one standing by the jacket. (Harris Dep., Johnson Decl., Exhibit "B" at 50:20). The officers searched the jacket and dropped it on the floor. A second police officer searched it and pulled out something from the jacket and said it belonged to plaintiff. (Harris Dep., Johnson Decl., Exhibit "B" at 49:20-23). Plaintiff denied that the jacket belonged to him. (Harris Dep., Johnson Decl., Exhibit "B" at 49:25). The police officer who searched the jacket found a green handed scalpel. (Harris Dep., Johnson Decl., Exhibit "B" at 49:20-23; Property Clerk Invoice No. 1000641373, ("Prop. Inv.), Johnson Decl., Exhibit "K" at Bates Stamp No. DEF000011).

The police officer then placed plaintiff in handcuffs. (Harris Dep., Johnson Decl., Exhibit "B" at 51:9). The police officers placed plaintiff in the back of a police vehicle. (Harris Dep., Johnson Decl., Exhibit "B' at 51:9-10). The police officer took photographs of plaintiff. (Harris Dep., Johnson Decl., Exhibit "B' at 51:10).  A police officer called police officers

4

working in the 40th Precinct and told the officers that he had plaintiff in his custody. (Harris

Dep., Johnson Decl., Exhibit "B' at 51:11-12).

Detective Brian Taylor noted on plaintiff's arrest report that the New York City

Police Department believed that plaintiff was a member of the 18 Park Gang and that plaintiff

had a tattoo with the inscription "M.O.B." on it. (Harris Arrest Rep. 1, Johnson Decl., Exhibit

"C" at Bates stamp No. DEF000001). Plaintiff has a tattoo on his arm with the words "M.O.B."

(Harris Dep., Johnson Decl., Exhibit "B" at 18:21; Arrest Rep. 1, Johnson Decl., Exhibit "C" at

Bates Stamp No. DEF000001). Plaintiff stated that the tattoo stands for "Money Over Bitches."

(Harris Dep., Johnson Decl., Exhibit "B" at 18:22-23). Detective Brian Taylor noted on

plaintiff's arrest report that the New York City Police Department knew plaintiff went by the

nickname "Eggy." (Harris Arrest Rep. 1, Johnson Decl., Exhibit "C" at Bates stamp No.

DEF000001). Plaintiff stated he received the nickname "Eggy" as a child because of the shape of

his head after a haircut. (Harris Dep., Johnson Decl., Exhibit "B" at 14:17-21; 15:5-8). Detective

Taylor arrested plaintiff for possession of a dangerous cutting instrument. (Harris Arrest Rep. 1,

Johnson Decl., Exhibit "C" at Bates stamp No. DEF000001). Detective Taylor checked

plaintiff's NYSID number and his DNA banner and issued plaintiff a desk appearance ticket.

(On Line Prisoner Arraignment Report, ("OLPA"), Johnson Decl., Exhibit "I" at Bates stamp

No. DEF000004; Desk Appearance Ticket for Jonathan Harris, ("DAT"), Johnson Decl., Exhibit

"J" at Bates stamp No. DEF000006). Plaintiff was in police custody for approximately one hour

and fifty six minutes. (OLPA, Johnson Decl., Exhibit "I" at Bates Stamp No. DEF000004).

5

Detective Taylor relied on the observations of Detective Magliano and Police Officer Noce to determine that plaintiff possessed a dangerous weapon. (Declination of Prosecution, District Attorney of the County of New York, ("Declination of Prosecution") dated June 2, 2015, Johnson Decl., Exhibit "L" at Bates Stamp No. DEF000005). The District Attorney for New York County declined to prosecute plaintiff because a scalpel is not a per se weapon. (Id.).

On December 7, 2015 plaintiff, along with 25 other individuals were indicted on charges of racketeering, murder, attempted murder, conspiracy to commit murder, and drug trafficking by a Grand Jury in the Southern District of New York. (United States v. Jonathan Harris et. al., 15 CR 445 (PAE), United States District Court for the Southern District of New York, ("Indictment"), Johnson Decl., Exhibit "E" at Bates Stamp Nos. DEF000057 through DEF000081).

Specifically the indictment states that plaintiff, along with others, participated in a long running criminal conspiracy to sell heroin, crack cocaine and marijuana from 2006 until December 2015. (Id. at Bates Stamp DEF000061). The indictment states plaintiff went by the nickname "Eggy." (Id.) The Indictment states that plaintiff was a member of the 18 Park Gang. (Id.). The criminal enterprise was called the 18 Park Gang and operated principally in the Bronx. (Id. at Bates Stamp DEF000059). The New York City Police Department noted that plaintiff had the number "18" tattooed on his right arm. (Arrest Report No. B156675001 for Jonathan Harris, ("Harris Arrest Rep. 3"), Johnson Decl., Exhibit "F" at Bates stamp No. DEF000082). The indictment states that in or about August or September of 2014, in vicinity of 331 East 146th

6

Street in Bronx, New York, plaintiff, also known as "Eggy," fired a gun at two rival gang associates. After the shooting, plaintiff, handed over the gun to Tjon Macoll, who hid the firearm. (Id. at Bates Stamp DEF000066).  Plaintiff invoked his fifth amendment right against self-incrimination at various points in response to questions about his indictment and whether he was a member of the 18 Park Gang. (Harris Dep., Johnson Decl., Exhibit "B" at 43:7-10; 61:3-1; 36:1-3).

On December 11, 2015, at 1250 Waters Place in the Bronx, New York, plaintiff voluntarily surrendered and was arrested by New York City Police Department and federal agents. (Harris Dep., Johnson Decl., Exhibit "B" at 34:9-12; Harris Arrest Rep. 3, Johnson Decl., Exhibit "F" at Bates stamp No. DEF000082). The investigation into the 18 Park Gang was conducted by agents from the Drug Enforcement Agency, the Department of Homeland Security, the Bureau of Alcohol Tobacco and Firearms and officers from the New York City Police Department. (Press Release, Department of Justice, United States Attorney for the Southern District of New York, December 9, 2015, ("Press Release"), 48 Members And Associates Of 2 Rival Bronx Street Gangs Charged In Federal Court With Racketeering Offenses, Including 3 Murders, Narcotics Trafficking, And Firearms Offenses, Johnson Decl., Exhibit "G" available at https://www.justice.gov/usao-sdny/pr/48-members-and-associates-2-rival-bronx-street-gangs-charged-federal-court-racketeering).    Plaintiff has been incarcerated at the Metropolitan Detention Center since his arrest. (Harris Dep., Johnson Decl, Exhibit "B" at 63:12-14).

## ARGUMENT

### POINT I

**DETECTIVE BRIAN TAYLOR, DETECTIVE NEIL MAGLIANO AND POLICE OFFICER SEAN NOCE ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S FALSE ARREST, FALSE IMPRISONMENT AND <u>DENIAL OF A RIGHT TO A FAIR TRIAL</u>**

**A. Legal Standard for Summary Judgment**

Summary judgment is designed to expedite civil cases by eliminating from the trial calendar those claims that can be resolved as a matter of law.  A court must grant a motion for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the non-movant, presents no genuine issue of material fact.  <u>Cifarelli v. Village of Babylon</u>, 93 F.3d 47, 51 (2d Cir. 1996).  A material fact is one that might affect the outcome of a suit under governing law.  <u>Kinsella v. Rumsfeld</u>, 320 F.3d 309, 311 (2d Cir. 2003).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

8

In a motion for summary judgment, the moving party can show that no genuine issue of material fact exists by "setting forth specific facts denying [plaintiff's] claims." Jermosen v. Coughlin, 877 F. Supp. 864, 867 (S.D.N.Y. Mar. 3, 1995) (citing Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986)).  The moving party may also prevail "by pointing out that there is an absence of evidence to support the non-moving party's case." Jermosen, 877 F. Supp. at 867 (quoting Gabai v. Jacoby, 800 F. Supp. 1149, 1153 (S.D.N.Y. Aug. 6, 1992)).  In order to avoid summary judgment, the non-moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial. Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008).  Evidence which is merely "colorable, conclusory, speculative or not significantly probative" is insufficient to withstand a summary judgment motion. Gabai, 800 F. Supp. at 1153 (S.D.N.Y. Aug. 6, 1992).  A motion for summary judgment, therefore, requires the party with the burden of proof at trial to "make a showing sufficient to establish the existence of an element essential to that party's case . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

In this case, summary judgment should be granted in favor of defendants because there are no issues of material fact to warrant a trial, defendants did nothing wrong and have not violated any constitutional right. Stephenson v. John Doe, Detective, 332 F.3d 68 (2d Cir. 2003).

**B.     Legal Standard for Qualified Immunity**

The United States Supreme Court has recently summarized the law on the doctrine of qualified immunity:

> The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law. Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken. Messerschmidt v. Millender, 132 S. Ct. 1235, 1244, 182 L. Ed. 2d 47 (2012) (citations and internal brackets and quotation marks omitted)." Goodman v. City of New York, 2015 U.S. Dist. LEXIS 37063, *7-8 (S.D.N.Y. Feb. 18, 2015).

Therefore, "[p]ublic officials are immune from suit under 42 U. S. C. §1983 unless they have violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.  An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it," meaning that "existing precedent . . . placed the statutory or constitutional question beyond debate." City & Cnty. of San Francisco v. Sheehan, 135 S. Ct. 1765, 1774 (2015) (citations and quotations omitted).  "This exacting

10

standard gives government officials breathing room to make reasonable but mistaken judgments .

. . ." Id. (quotations omitted); see also Markman v. City of New York, 2015 U.S. App. LEXIS

19087, *4 (2d Cir. Nov. 2, 2015) (officers entitled to qualified immunity where "reasonable

officers could disagree" about whether conduct was lawful). Even if an individual defendant

violates a clearly established right, qualified immunity is nevertheless available if "it was

'objectively reasonable' for [the official] to believe that his actions were lawful at the time of the

challenged act." Cerrone v. Brown, 246 F.3d 194, 199 (2d Cir. 2001) (quoting Lennon v. Miller,

66 F.3d 416, 420 (2d Cir. 1995)." Stephens v. Venettozzi, 2016 U.S. Dist. LEXIS 24123, *44

(S.D.N.Y. Feb. 24, 2016).

In this case, defendants are entitled to summary judgment on the issue of qualified

immunity because defendants, based on the facts alleged by plaintiff, could not have reasonably

believed their actions violated some settled constitutional right.


**C.      Legal Standard for Probable Cause for Arrest**


Probable cause is a complete defense to an action for false arrest or false

imprisonment. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996); Kinzer v. Jackson, 316 F.3d

139, 143 (2d Cir. 2003). Probable cause exists "when the arresting officer has knowledge or

reasonably trustworthy information sufficient to warrant a person of reasonable caution in the

belief that an offense has been committed by the person to be arrested." Singer v. Fulton County

11

Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) (citing Hygh v. Jacobs, 961 F.2d 359, 366 (2d Cir. 1992)); Boyd v. City of New York, 336 F.3d 72, 75 (2d Cir. 2003). Probable cause requires only a probability, not an actual showing, of criminal activity. Illinois v. Gates, 462 U.S. 213 (1983); Ricciuti v. New York City Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997); Miloslavsky v. AES Eng'g Soc'y, Inc., 808 F. Supp. 351, 354 (S.D.N.Y. 1992), aff'd, 993 F.2d 1534 (2d Cir. 1993). Moreover, the validity of an arrest does not depend upon an ultimate finding of guilt or innocence. Pierson v. Ray, 386 U.S. 547, 555 (1967); Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). Thus, whether the suspect was later acquitted of the charges for which he was arrested is irrelevant to a determination of probable cause at the time of arrest. Michigan v. DeFillippo, 443 U.S. 31, 36 (1979). Defendants submit that, at a minimum, there was indisputably "arguable probable cause" for plaintiff's arrest.

The U.S. Supreme Court has found that warrantless arrests supported by probable cause for any offense are constitutional. Therefore an officer's subjective state of mind is irrelevant to the existence of probable cause, what matters are the facts he is presented with at the time of the arrest. Devenpeck v. Alford, 543 U.S. 146, 153, (2004). In Devenpeck, the U.S. Supreme Court held that an officer's subjective reasons for making an arrest need not be "the criminal offense as to which the known facts provide probable cause." Id. The U.S. Supreme Court thus rejected the view that probable cause "must be predicated upon the offense invoked by the arresting officer, or even upon an offense 'closely related' to the offense invoked by the arresting officer." Jaegly v. Couch, 439 F.3d 149, 153, (2d Cir. N.Y. 2006). Therefore, "a

12

plaintiff is not entitled to damages under § 1983 for false arrest so long as the arrest itself was supported by probable cause, regardless of whether probable cause supported any individual charge identified by the arresting officer at the time of arrest." Id. at 154.

Even if probable cause to arrest is ultimately found not to have existed, an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was "arguable probable cause" to arrest. "Arguable probable cause, [which] exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotation marks omitted). Markman v. City of New York, 2015 U.S. App. LEXIS at *2 (2d Cir. N.Y. Nov. 2, 2015).  Therefore defendants state that at a minimum there was "arguable" probable cause for plaintiff's arrest.

### D.    Legal Standard for Denial of a Right to a Fair Trial

To prevail on a fabrication of evidence claim, a plaintiff must show that "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." Jovanovic v. City of New York, 486 Fed. Appx. 149, 152, (2d Cir. 2012) (citing Jocks v. Tavernier, 316 F.3d 128, 138 (2d Cir. 2003). However, creating arrest documents and forwarding them to DA's Office cannot sustain a claim for denial of a right to a fair trial. Horvath v. City of New York, No. 12-CV-6005 (RJD) (MDG), 2015 U.S. Dist. LEXIS 51029, at

13

**15-17 (E.D.N.Y. Apr. 17, 2015); <u>Brown v. City of New York</u>, No. 14-CV-5372 (BMC), 2014 U.S. Dist. LEXIS 181736, at **3-11 (E.D.N.Y. Dec. 23, 2014) (dismissing plaintiff's denial of right to fair trial claim on a motion to dismiss pursuant to Rule 12(b)(6) and holding that allegedly false statements contained in arrest paperwork or criminal court complaints or told to the District Attorney's Office cannot be the basis for a denial of a right to fair trial by fabricated evidence claim because these statements are inadmissible hearsay and would never reach a jury).

Plaintiff presents no evidence to support his denial of a right to a fair trial claim, merely stating that "[t]he individual defendants forwarded false evidence to prosecutors in the New York County District Attorney's office," (Am. Cmpl., Johnson Decl., Exhibit "A" at ¶ 35). Plaintiff states that the district attorney's office declined to prosecute him. (<u>Id.</u> at ¶ 24), therefore plaintiff suffered no deprivation of liberty in violation of the right to a fair trial under U.S. Const. amend. VI ("Sixth Amendment"). As well, plaintiff presents no evidence to support that the individual defendants forwarded admissible evidence to support his denial of a right to a fair trial claim.

Therefore defendants argue plaintiff's denial of a right to a fair trial claim must fail because plaintiff suffered no deprivation of liberty as a result of any alleged evidence forwarded to the New York County District attorney and the individual defendants' criminal complaints cannot constitute falsified evidence in a denial of a right to a fair trial claim.

### E.    Criminal Possession of a weapon in the Fourth Degree

14

There was, at a minimum, "arguable probable cause" for plaintiff's arrest and prosecution based on the charge criminal possession of a weapon in the Fourth Degree, N.Y. Penal Law § 265.01. Under New York Law, a person is guilty of criminal possession of a weapon in the fourth degree when "he possesses any dagger, dangerous knife, dirk, razor, stiletto, imitation pistol, or any other dangerous or deadly instrument or weapon with intent to use the same unlawfully against another." N.Y. Penal Law § 265.01(2). A dangerous instrument is "any instrument ... which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury." N.Y. Penal Law § 10.00(13). Further, Courts have ruled that a scalpel may be considered a dangerous weapon, considering the context of where the instrument is found and that such an application of NY CLS Penal Law § 265.01 is not constitutionally void for vagueness. Small v. Bud-Kworldwide, Inc., 895 F. Supp. 2d 438, 451-452, (E.D.N.Y. 2012) (citing State v. Horton, 98 N.J. Super. 258, 236 A.2d 891, 893 (Super. Ct. N.J. 1967) which holds that "[a] scalpel in a physician's bag may be just a scalpel; a 'scalpel' in a pocket may be a concealed dangerous weapon.").

Detective Taylor had reasonably trustworthy information from Detective Magliano and Police Offer Noce that plaintiff possessed a dangerous weapon. (Declination of Prosecution, Johnson Decl., Exhibit "L" at Bates Stamp No. DEF000005). Therefore Plaintiff's arrest was valid under the fellow officer rule. "Under the fellow officer rule, a police officer can make a lawful arrest even without personal knowledge sufficient to constitute probable cause, so

15

long as the officer is acting 'upon the direction of or as a result of communication with' a fellow officer. People v. Ramirez-Portoreal, 88 N.Y.2d 99, 113, 666 N.E.2d 207, 643 N.Y.S.2d 502 (1996) (citation omitted)." Williams v. City of New York, 2012 U.S. Dist. Lexis 21729, *17, (S.D.N.Y. Feb. 17, 2012). Based on these circumstances, a reasonable officer could believe a scalpel discovered in the circumstances faced by defendants was a dangerous weapon held in violation of N.Y. Penal Law § 265.01(2). For that reason, plaintiff's arrest was valid and the individual defendants did not violate his constitutional rights. Stephenson v. John Doe, Detective, 332 F.3d 68 (2d Cir. 2003).

There was, at a minimum, "arguable" probable cause to believe plaintiff was in possession of the scalpel. An individual is in possession of an item when he has "physical possession or otherwise to exercise dominion or control over tangible property." NY CLS Penal §10.00(8). For the purposes of the statue, "a person is in constructive possession of an object when he is "able to exercise dominion or control" over it. Chalmers v. Mitchell, 73 F.3d 1262, 1272 (2d Cir. 1996).

In this case, defendants had arguable probable cause to arrest plaintiff for possession of the scalpel. The jacket was approximately 10 to 15 feet away from plaintiff. (Harris Dep., Johnson Decl., Exhibit "B" at 49:10-12; 51:1-3). No one was standing near the jacket or otherwise claiming possession of the jacket. (Harris Dep., Johnson Decl., Exhibit "B" at 50:20). The jacket was hanging on a fence in an open area. (Harris Dep., Johnson Decl., Exhibit "B" at 49:13-14). A reasonable officer could have assumed that plaintiff had possessed the

16

jacket and that the scalpel that was found inside the jacket was a dangerous weapon capable of causing death or other serious physical injury, even if that belief was mistaken.

### F.   Racketeer Influence and Corrupt Organization Act

There was also at a minimum, "arguable probable cause" to arrest plaintiff for racketeering. A person violates the Racketeer Influenced and Corrupt Organizations Act (RICO), when that individual conspires to violate state criminal statues prohibiting gambling, murder, kidnapping, extortion, robbery, bribery, dealing with a controlled substance and other activities. 18 U.S.C. § 1961.

A police officer has probable cause to arrest an individual "when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015). Further, "a police officer can rely on information obtained from a police computer database in order to establish probable cause. See, Herring v. United States, 129 S.Ct. 695, 704, 172 L. Ed. 2d 496 (2009)." Hughes v. McWilliams, 2009 U.S. Dist. LEXIS 116642, *8-9, 2009 WL 4823940 (S.D.N.Y. Dec. 15, 2009).

Defendants had reasonably trustworthy information that plaintiff was currently engaged in an ongoing criminal conspiracy. That evidence included: the tattoos on plaintiff's body (Harris Dep., Johnson Decl., Exhibit "B" at 18:19-21; Harris Arrest Rep. 1, Johnson Decl., Exhibit "C" at DEF00001); information received from the New York Police Department that

17

plaintiff was a member of the 18 Park gang (Harris Arrest Rep. 1, Johnson Decl., Exhibit "C" at Bates stamp No. DEF000001; Indictment, Johnson Decl., Exhibit "E" at Bates Stamp No. DEF000057); that plaintiff went by the nickname "Eggy" (Id.); that an individual named Jonathan Harris who went by the named "Eggy" was a member of an ongoing criminal conspiracy (Id.); and the fact plaintiff had been recently arrested for possession of a dangerous weapon (Harris Arrest Rep. 2, Johnson Decl. Exhibit "D" at DEF000013). Plaintiff admits that his nick name was "Eggy." (Harris Dep., Johnson Decl., Exhibit "B" at 14:17-21; 15:5-8). Plaintiff also admits that a police officer called the 40th precinct where he lives and informed police officers at that precinct that plaintiff was in custody. (Harris Dep., Johnson Decl., Exhibit "B" at 51:11-12). By checking plaintiff's NYSID, Detective Taylor knew plaintiff had been arrested on April 10, 2015 for possession of a dangerous weapon as well as any other arrests of plaintiff. (OLPA, Johnson Decl., Exhibit "I" at Bates stamp No. DEF000004).  Plaintiff later pled guilty to charges in connection with his April 10, 2015 arrest. (Johnson Decl., Exhibit "B" at 30:21-22; 31:1).

It is also undisputed that at the time of plaintiff's arrest, he was the subject of an ongoing investigation conducted by officers from the New York City Police Department and agents from the Bureau of Alcohol, Tobacco and Firearms, the Drug Enforcement Agency and the Department of Homeland Security. (Press Release, Johnson Decl., Exhibit "G" available at https://www.justice.gov/usao-sdny/pr/48-members-and-associates-2-rival-bronx-street-gangs-charged-federal-court-racketering). Finally, plaintiff was indicted by a grand jury for violating

18

18 U.S.C. § 1961, the RICO act, for being a member of the 18 Park gang. (Indictment, Johnson Decl., Exhibit "E" at Bates Stamp Nos. DEF000057 through DEF00081).

Therefore, based on those facts, it was reasonable for defendants to assume that plaintiff had violated had committed *some* criminal offense even if subjectively defendants did not name every conceivable offense for which plaintiff committed in furtherance of his participation in an ongoing criminal enterprise at the time of his May 7, 2015 arrest. "Once probable cause exists, … law enforcement is legitimately empowered, but not required, to arrest the suspect." United States v. Abney, 2003 U.S. Dist. LEXIS 15055, *12, 2003 WL 22047842 (S.D.N.Y. Aug. 28, 2003) (citing, Buie v. Sullivan, 923 F.2d 10, 12-13, 1990 U.S. App. LEXIS 22454, *8 (2d Cir. N.Y. 1990).

Therefore, the individual defendants did not violate plaintiff's constitutional rights and they are entitled to dismissal, not only on the ground of qualified immunity, but because they did nothing wrong. Stephenson v. John Doe, Detective, 332 F.3d 68 (2d Cir. 2003). Stated differently, courts "focus on the validity of the arrest, and not on the validity of each charge. Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. N.Y. 2006).

There was "arguable probable cause" for plaintiff's arrest. If a court finds that a defendant violated a clearly defined right, "an officer is still entitled to qualified immunity if officers of reasonable competence could disagree on the legality of the action at issue in its particular factual context." Walczyk v. Rio, 496 F. 3d 139, 154 (2d Cir. 2007) (internal citations omitted).

First, there can be no dispute that Taylor, Magilano and Noce, are "public servants," and were engaged in an "official function" at the time of the underlying incident. They were on duty and present at the scene of the incident. (Declination of Prosecution, Johnson Decl., Exhibit "L" at Bates Stamp No. DEF000005).  Second, there is no dispute that plaintiff was standing in the vicinity of the jacket in dispute, which contained the scalpel. (Harris Dep., Johnson Decl., Exhibit "B" at 49:10-12; 51:1-3). Third, there can be no dispute that plaintiff went by the nickname "Eggy" (Harris Dep., Johnson Decl., Exhibit "B" at 14:17-21; 15:5-8); and that the New York City Police Department believed that an individual with plaintiff's name and nickname belonged to a criminal conspiracy that principally operated near the location of plaintiff's residence and the location of plaintiff's April 10, 2015 arrest. (Indictment, Johnson Decl., Exhibit "E" at Bates Stamp No. 59; Harris Arrest Rep. 2, Johnson Decl., Exhibit "D" at DEF000013; Harris Dep., Johnson Decl., Exhibit "B" at 4:9-11). Finally there can be no dispute that plaintiff was indicted for his participation in that ongoing criminal enterprise. (Indictment, Johnson Decl., Exhibit "E" at Bates Stamp Nos. DEF000057 through DEF000081).

Therefore, based on the totality of the circumstances, reasonable officers could have disagreed whether plaintiff could have been arrested for violating the RICO statue on May 7, 2015.  Accordingly, the individual defendants had, at a minimum, arguable probable cause to believe that plaintiff had committed some crime or was participating in some ongoing criminal conspiracy on or before May 7, 2015 or in the alternative, defendants are entitled to qualified immunity because it was objectively reasonable for them to believe that their actions were lawful

at the time of plaintiff's arrest and did not violate any clearly identified statutory or constitutional right.

Based on the foregoing, there was "arguable probable cause" for plaintiff's arrest and prosecution for criminal possession of a dangerous weapon and for violating the RICO act.

**POINT II**

**DEFENDANT CITY OF NEW YORK SHOULD BE GRANTED SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR MUNICIPAL LIABILITY**

Defendants should be granted summary judgment on plaintiff's claim for municipal liability as plaintiff has failed to state a valid claim. As set forth *supra*, plaintiff's constitutional rights were never violated by any of the named individual defendants. As such, plaintiff has suffered no constitutional injury for which defendant City may be liable. City of Los Angeles v. Heller, 475 U.S. 796,799 (1986 (if plaintiff cannot show her constitutional rights were violated by a City actor, then there cannot be Monell liability); Martinez v. City of New York, No 06 Civ. 5671 (WHP), 2008 U.S. Dist. LEXIS 49203, at *12 (S.D.N.Y. June 27, 2008) (noting that "[a] municipality cannot be liable for acts by its employees which are not constitutional violations."), aff'd, Martinez v. Muentes,340 Fed. Appx. 700 (2d. Cir. July 27, 2009).

In addition, plaintiff has not claimed any facts that would give rise to the inference that plaintiff's arrest was caused by an existing unconstitutional municipal policy

21

attributed to a municipal policymaker.  See Oklahoma v. Tuttle, 471 U.S. 808, 823-24 (1985) (proof of a single incident of unconstitutional activity is insufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker); Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993) ("The mere assertion …. that a municipality has such a custom or policy is insufficient").   Plaintiff merely asserts in his Complaint that "Upon information and belief, defendants took law enforcement action with regard to Mr. Harris based solely on his actual and/or perceived color and/or race"  without offering any evidence of how the alleged practice relates to plaintiff's claim nor does plaintiff submit any evidence that the alleged practice exists. (Am. Cmpl., Johnson Decl., Exhibit "A" at ¶ 24.) Accordingly, plaintiff's Monell claim fails as a matter of law.

### POINT III

### PLAINTIFF'S  CASE  SHOULD  BE DISMISSED FOR FAILURE TO PROSECUTE

Plaintiff's case should be dismissed, or in the alternative summary judgment should be granted, for plaintiff's failure to prosecute his claim. Plaintiff repeatedly invoked his constitutional right against self-incrimination at his deposition in response to specific material questions for actions that occurred on or before May 7, 2015, the date of his arrest. While the assertion of one's Fifth Amendment right against self-incrimination may be a valid ground to decline to answer questions during a deposition, "it has never been thought to be in itself a

22

substitute for evidence that would assist in meeting a burden of production." <u>United States v.</u> <u>Rylander</u>, 460 U.S. 752, 752 (1983). A plaintiff who claims the privilege is not "freed from adducing proof in support of a burden which would otherwise have been his." <u>United States v.</u> <u>4003-4005 5th Ave.</u>, 55 F.3d 78, 83 (2d Cir. 1995). Thus, "the claim of privilege will not prevent an adverse finding or even summary judgment if the litigant does not present sufficient evidence to satisfy the usual evidentiary burdens in the litigation." <u>Williams v. Savory</u>, 87 F. Supp. 3d 437 (S.D.N.Y. 2015) (Citing, <u>Louis Vuitton Malletier S.A. v. LY USA</u>, Inc., 676 F.3d 83, 98 (2d Cir. 2012)).

At various points during his deposition, plaintiff invoked his Fifth Amendment Right. Plaintiff invoked his Fifth Amendment right when he was asked if he was a member of the 18 Park Gang. (Harris Dep., Johnson Decl., Exhibit "B" at 36:1-3). Plaintiff invoked his Fifth Amendment right  when asked whether any individual indicted with him on Dec. 7, 2015 was present at the scene of his arrest. (Harris Dep., Johnson Decl., Exhibit "B" at 43:7-10). Plaintiff invoked his Fifth Amendment right when asked if he was engaged in a criminal conspiracy on May 7, 2015 or whether any of the activity referenced in that indictment took place prior to his arrest on May 7, 2015. (Harris Dep., Johnson Decl., Exhibit "B" at 61:3-11).

Therefore unless plaintiff can provide admissible evidence to rebut the presumption that he was a participant in an ongoing criminal enterprise that sought to sell narcotics and engage in violence on or before May 7, 2015 and that defendants did not have a reasonable, even if mistaken, belief at the time of his arrest that plaintiff was engaged in said

23

ongoing criminal enterprise, then plaintiff's case must be dismissed for failure to prosecute or in the alternative, defendants motion for summary judgment must be granted.

## **CONCLUSION**

For the foregoing reasons, defendants City of New York, Detective Brian Taylor, Detective Neil Magliano and Police Officer Sean Noce respectfully request that the Court grant their motion for summary judgment in its entirety, together with costs, fees and such other and further relief as the Court deems just and proper.

Dated:      New York, New York
            June 1, 2016

                        ZACHARY W. CARTER
                        Corporation Counsel of the City of New York
                        *Attorney for Defendants City of New York,*
                        *Taylor, Magiliano and Noce*
                        100 Church Street
                        New York, New York 10007
                        (212) 356-2409

                        By: _____
                           Paul H. Johnson
                           *Assistant Corporation Counsel*
                           Special Federal Litigation Division


Cc:        Gabriel Harvis, Esq. (via ECF)
           Law Offices of Harvis & Fett
           Attorneys for Plaintiff
           305 Broadway
           New York, NY 10007

24