UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
JONATHAN HARRIS,

               Plaintiff,

         -against-                              15 CV 8456 (CM)

CITY OF NEW YORK; Detective BRIAN
TAYLOR, Shield No. 4438; Police Officer
NEIL MAGLIANO, Shield No. 2766; Police
Officer SEAN NOCE, Shield No. 31328;
and JOHN and JANE DOE 1 through 10,
individually and in their official capacities
(the names John and Jane Doe being
fictitious, as the true names are presently
unknown),

               Defendants.

-------------------------------------------------------x

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON QUALIFIED IMMUNITY

HARVIS & FETT LLP
305 Broadway, 14th Floor
New York, New York 10007

*Attorneys for Plaintiff*

June 15, 2016

# TABLE OF CONTENTS

**Page**

UNDISPUTED MATERIAL FACTS ........................................................................ 1

DISPUTED MATERIAL FACTS ........................................................................... 2

THE SUMMARY JUDGMENT STANDARD ......................................................... 2

ARGUMENT ........................................................................................................ 3

    DEFENDANTS LACKED PROBABLE CAUSE TO ARREST ................... 3

    DEFENDANTS ARE NOT ENTITLED TO QUALIFIED
    IMMUNITY ........................................................................................ 7

    FABRICATING EVIDENCE VIOLATES THE CONSTITUTION.......... 10

    PLAINTIFF HAS PROSECUTED THE ACTION .................................... 13

    PLAINTIFF'S BIAS-BASED PROFILING CLAIM IS WITHDRAWN...... 15

CONCLUSION ................................................................................................... 16

## TABLE OF AUTHORITIES

### CASES

*Alhovsky v. Ryan*, 658 F. Supp. 2d 526, 532 (S.D.N.Y. 2009), *aff'd sub nom. Alhovsky v. Paul*, 406 F. App'x 535 (2d Cir. 2011) .......................................................... 4, 6

*Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 122 (2d Cir. 2004) .................. 3

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ........................................ 2

*Binder & Binder PC v. Barnhart,* 481 F.3d 141, 148 (2d Cir. 2007 ........................... 3

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ..................................................... 3

*Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003) ...................................... 3

*Devenpeck v. Alford,* 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004) ...... 5

*Douglas v. City of New York*, 595 F.Supp. 2d 333, 341 (S.D.N.Y. 2009) .................... 8

*Dowling v. City of New York*, 11 CV 4954 (NGG), 2013 WL 5502867, *6 (E.D.N.Y. Sept. 30, 2013) ......................................................................................................... 12

*Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009) ................................................ 7

*Flores v. City of Mt. Vernon, 41* F.Supp.2d 439 (S.D.N.Y. 1999) .......................... 6, 13

*Garnett v. Undercover Officer C0039*, 13 CV 7083 (GHW), 2015 WL 1539044, *8 (S.D.N.Y. Apr. 6, 2015) ......................................................................................... 11

*Gerstein v. Pugh*, 420 U.S. 103, 111–112 (1975) ........................................................ 4

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237-38 (1989)........................................ 7

*Hargroves v. City of New York*, 411 F. App'x. 378, 383 (2d Cir. 2011) ...................... 4

*Harlow v. Fitzgerald,*
    *457 U.S. 800 (1982)* ............................................................................................... 7

*Hines v. City of Yonkers*, 08 CV 3126 (CM), 2011 WL 3055369 (S.D.N.Y. July 20, 2011)........................................................................................................................ 9, 10

*Holeman v. City of New London*, 425 F.3d 184, 190 (2d Cir. 2005) ........................... 4

*Jenkins v. City of New York,* 478 F.3d 76, 87 (2d Cir. 2007) ...................................... 8

*Keller v. Sobolewski,* 10 CV 5198 (FB), 2012 WL 4863228, *4 (E.D.N.Y. Oct. 12, 2012) ....................................................................................................................... 12

*Kent v. Katz*, 312 F.3d 568, 576 (2d Cir. 2002)............................................................ 5

*Kerman v. City of New York,* 261 F.3d 229, 239 (2d Cir. 2001) ................................. 8

*Lee v. McCue*, 410 F. Supp. 2d 221, 226 (S.D.N.Y. 2006)......................................... 8

*Lewis v. Rawson*, 564 F.3d 569, 576 (2d Cir. 2009) ................................................. 15

*Lopez v. City of New York*, 105 F. Supp. 3d 242, 246-47 (E.D.N.Y. 2015) ............. 12

*Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996) ............................. 5

*Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000)......................................... 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) ............. 3

*McLaurin v. Falcone*, 2007 WL 247728, *1 (2d Cir. 2007) .......................................... 8

*Micalizzi v. Ciamarra*, 206 F. Supp. 2d 564, 575 (S.D.N.Y. 2002)........................... 5

*Pearson v. Callahan, 129 S. Ct. 808 (2009)* ................................................................ 7

*R.B. Ventures, Ltd. v. Shane,* 112 F.3d 54, 59 (2d Cir. 1997) ................................... 3

*Raysor v. Port Auth. of New York & New Jersey*, 768 F.2d 34, 40 (2d Cir. 1985) ........ 4

*Ricciuti v. New York City Transit Auth.,* 124 F.3d 123, 130 (2d Cir. 1997)............. 12

*Robison v. Via,* 821 F.2d 913, 924 (2d Cir. 1987) ..................................................... 8

*Schiller v. City of New York* (multiple numbers), 2008 WL 200021, *10 (S.D.N.Y.
Jan. 23, 2008) ......................................................................................................... 12

*United States v. Rodriguez*, 392 F.3d 539, 548 (2d Cir. 2004) ................................... 5

*Vasquez v. McPherson*, 285 F. Supp. 2d 334, 340-41 (S.D.N.Y. 2003)....................... 4

*Walczyk v. Rio*, 496 F.3d 139, 166-67 (2d Cir. 2007) ............................................... 10

Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) .................................................... 5

*Whren v. United States,* 517 U.S. 806, 813 (1996) ..................................................... 4

*Woods v. Goord*, 01-CV-3255 (SAS), 2002 WL 731691, at *10 (S.D.N.Y. April 23,
2002) ....................................................................................................................... 10

*Wu v. City of New York*, 934 F.Supp. 581, 586 (1996).............................................. 4

*Zellner v. Summerlin*, 494 F.3d 344, 372–77 (2d Cir. 2007)............................. 6, 7, 9

## STATUTES

§ 1983 ....................................................................................................................... 12

N.Y.P.L. § 265.01................................................................................................... 1, 5

## RULES

FED. R. CIV. P. 56 ....................................................................................................... 2

FED. R. CIV. P. 56(c) ................................................................................................... 2

FED. R. CIV. P. 56(e)................................................................................................... 3

## TREATISES

8 Charles A. Wright, Arthur R. Miller and Richard L. Marcus, Federal Practice and
Procedure § 2018, at 273 (2d ed. 1994) .............................................................. 14

## UNDISPUTED MATERIAL FACTS

On May 7, 2015, plaintiff Jonathan Harris was in the vicinity of 63rd Street and Amsterdam Avenue visiting a friend. Plaintiff's Response to Defendants' Statement Pursuant to Local Civil Rule 56.1 ("56.1 Opp."), ¶ 6. While standing with two women, Mr. Harris was approached by police officers and searched. *Id.* at ¶¶ 8-9; Deposition of Jonathan Harris ("Harris Dep.") annexed as Exhibit 1 to the Declaration of Gabriel P. Harvis dated June 15, 2016 ("Harvis Decl."), p. 48, ln. 13-16. Nothing was recovered. *Id.* at p. 48, ln. 14-24.

After leaving Mr. Harris, the officers turned their attention to a jacket hanging on a fence approximately 10 and 15 feet away from him. *Id.* at p. 48, ln. 25-p. 49, ln. 2; 56.1 Opp. at ¶ 14. The jacket did not belong to Mr. Harris and he had never had it in his possession. Harris Dep., Harvis Decl., Ex. 1, p. 49, ln. 24-25; p. 50, ln. 1-2.

The officers searched the jacket and pulled an object from its pocket. 56.1 Opp. at ¶ 17. Mr. Harris was then arrested and charged with possessing a scalpel in violation of N.Y.P.L. § 265.01, Criminal Possession of a Weapon in the Fourth Degree. Arrest Report, Exhibit C to the Declaration of Paul Johnson dated June 1, 2016 ("Johnson Decl.").

Defendant Bryan Taylor, on behalf of defendants Neil Magliano and Sean Noce, falsely informed prosecutors that Mr. Harris was observed holding and

dropping the jacket. Declined Prosecution Memorandum, Johnson Decl., Ex. L; Harris Dep., Harvis Decl., Ex. 1, p. 49, ln. 24-25; p. 50, ln. 1-2.

The District Attorney declined to prosecute Mr. Harris on the basis that, even under the officers' false account of actual possession, a scalpel is *per se* legal under New York State Law unless it is being used as a weapon. *Id.*

## DISPUTED MATERIAL FACTS

In dispute is what the officers knew and observed at the time they approached, searched and decided to arrest Mr. Harris, including whether they actually saw him holding the jacket as claimed. 56.1 Opp., ¶ 46.

## THE SUMMARY JUDGMENT STANDARD

It is well settled that summary judgment under FED. R. CIV. P. 56(c) is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is "material" within the meaning of FED. R. CIV. P. 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to

draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 122 (2d Cir. 2004) (quotation omitted).

The moving party carries the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting FED. R. CIV. P. 56(e)). "[I]f 'there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.'" *Binder & Binder PC v. Barnhart,* 481 F.3d 141, 148 (2d Cir. 2007) (quoting *R.B. Ventures, Ltd. v. Shane,* 112 F.3d 54, 59 (2d Cir. 1997)) (alteration in original).

## ARGUMENT

### POINT I

#### DEFENDANTS LACKED PROBABLE CAUSE TO ARREST

In the Second Circuit, the warrantless arrest of an individual is presumptively unlawful. *Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003). "[D]efendant has the burden to establish that he had probable cause." *Vasquez v. McPherson*, 285 F.

Supp. 2d 334, 340-41 (S.D.N.Y. 2003) (citing *Raysor v. Port Auth. of New York & New Jersey,* 768 F.2d 34, 40 (2d Cir. 1985) and *Wu v. City of New York,* 934 F.Supp. 581, 586 (1996)); *see Alhovsky v. Ryan*, 658 F. Supp. 2d 526, 532 (S.D.N.Y. 2009), *aff'd sub nom. Alhovsky v. Paul*, 406 F. App'x 535 (2d Cir. 2011) ("It is axiomatic that the police cannot arrest a person unless they have probable cause to believe that he has committed a crime.") (citing *Gerstein v. Pugh,* 420 U.S. 103, 111–112 (1975)). "To meet his burden, defendant must show, by admissible evidence, that he had a quantum of evidence more than rumor, suspicion, or even a strong reason to suspect." *Id.* (quotation marks and citations omitted).

In the *Vasquez* case, this Court explained that "arrests cannot be based on mere suspicion" and, as a result, "the facts relied upon by an arresting officer must not be susceptible of an innocent or ambiguous explanation." *Id.* (citations omitted).

Whether probable cause or reasonable suspicion exists is an objective inquiry. *Holeman v. City of New London*, 425 F.3d 184, 190 (2d Cir. 2005) (citing *Whren v. United States,* 517 U.S. 806, 813 (1996)). "[T]he existence of probable cause is to be determined on the basis of the totality of the circumstances…through an inquiry into whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause or arguable probable cause to arrest." *Hargroves v. City of New York*, 411 F. App'x. 378, 383 (2d Cir. 2011) (citing *Kent v. Katz*, 312 F.3d 568,

576 (2d Cir. 2002) and *Devenpeck v. Alford,* 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004)); *see Vasquez*, 285 F. Supp. 2d at 340 ("Courts evaluating probable cause must consider those facts available to the officer at the time of the arrest and immediately before it.") (citing *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 569 (2d Cir. 1996)). "Whether or not probable cause existed may be determinable as a matter of law, but if the pertinent events and knowledge of the arresting officer is in dispute, then the question is properly left to the jury." *Micalizzi v. Ciamarra*, 206 F. Supp. 2d 564, 575 (S.D.N.Y. 2002) (citing *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996)).

Here, there were no objective facts to establish probable cause for violation of N.Y.P.L. § 265.01 or any other crime. Indeed, adopting plaintiff's narrative – as the Court must at this stage – no reasonable officer could have determined that Mr. Harris possessed the jacket. First, Mr. Harris never had actual possession of the jacket and therefore no officer could have seen him with it as claimed. Second, Mr. Harris's mere presence 10-15 feet away from the jacket – in a public space over which he had no dominion or control – fails to establish constructive possession as a matter of law. *United States v. Rodriguez*, 392 F.3d 539, 548 (2d Cir. 2004) ("To establish constructive possession, the government must demonstrate that [a suspect] had the power and intention to exercise dominion and control over the [object]. Mere

presence at the location of contraband does not establish possession.") (quotations and citations omitted); *accord Flores v. City of Mt. Vernon, 41* F.Supp.2d 439 (S.D.N.Y. 1999) ("And of course, the mere fact that a person is physically proximate to others who are suspected of criminal narcotics activity does not give rise to probable cause; there must be something more in order for an arrest to be lawful.") (collecting cases).

Likewise, defendants' alternative theories for probable cause lack support in the record and are misguided. The fact that plaintiff was arrested in April 2015 was: a) not known to the officers who arrested him on May 7, 2015; and b) immaterial to the (arguable) probable cause analysis in any event. *See Alhovsky v. Ryan*, 658 F. Supp. 2d at 532 ("Probable cause must extend to every element of the crime for which a person is arrested. When an arrest is made, the police officer must have reasonably believed that each element of the criminal offense for which the arrest was made was committed.") (citing *Zellner v. Summerlin,* 494 F.3d 344, 372–77 (2d Cir. 2007)).

By the same token, there is not a scintilla of evidence that the defendants knew anything of the investigation underlying plaintiff's subsequent RICO indictment at the time they arrested him on May 7, 2015. Even if they did, defendants would still bear the burden of establishing that those facts amounted to probable cause to arrest for a RICO violation. The "facts" they offer in their motion, including notations about nicknames, tattoos and alleged gang affiliation on an arrest report generated

*after* the arrest, an indictment issued seven months later, and an unrelated prior arrest defendants knew nothing about would not support a RICO charge in this or any other court. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237-38 (1989) (holding that in order to prove a pattern of racketeering activity under RICO, plaintiff or prosecutor must show at least two racketeering predicates that are related and that amount to, or threaten the likelihood of, continued criminal activity).

## POINT II

## DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). For the purposes of the qualified immunity analysis, officers must establish "[a]rguable probable cause," which exists when "a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law." *Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009) (quoting *Zellner*, 494 F.3d at 369) (emphasis in original).

However, "[a]rguable probable cause must not be misunderstood to mean almost probable cause." *Zellner*, 494 F.3d at 369 (quoting *Jenkins v. City of New York,* 478 F.3d 76, 87 (2d Cir. 2007)) (internal quotation marks omitted). "If officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause, the fact that it came close does not immunize the officer." *Jenkins,* 478 F.3d at 87.

"Defendants are not entitled to summary judgment if *any* reasonable trier of fact could find that the defendants' actions were objectively unreasonable." *Douglas v. City of New York*, 595 F.Supp. 2d 333, 341 (S.D.N.Y. 2009) (internal quotation omitted) (emphasis added). Where there are disputes as to material facts relevant to the qualified immunity analysis, it is reversible error to grant qualified immunity to a defendant on summary judgment. *McLaurin v. Falcone*, 2007 WL 247728, *1 (2d Cir. 2007) (citing *Kerman v. City of New York,* 261 F.3d 229, 239 (2d Cir. 2001) and *Robison v. Via,* 821 F.2d 913, 924 (2d Cir. 1987)) ("Because there are disputes of fact here as to whether McLaurin resisted arrest and whether the level of force used by the officers was necessary and reasonable, the District Court's grant of qualified immunity was premature."); *see Lee v. McCue*, 410 F. Supp. 2d 221, 226 (S.D.N.Y. 2006) ("It should go without saying that this court cannot resolve the numerous disputes of fact that exist in the record. Only a jury can do that.").

The analytical framework articulated in *Zellner* calls for denial of summary judgment here. In *Zellner*, the Second Circuit reversed the district court's grant of judgment as a matter of law to defendants on the basis of qualified immunity for a warrantless disorderly conduct arrest of Zellner. Here, as in *Zellner*, deciding qualified immunity would require the Court to invade the province of the jury to make findings of fact and determine credibility. This is so because the parties present two entirely different versions of what happened. If a jury believes the officers, it will find that the defendants saw Mr. Harris drop a jacket with a scalpel in it. If the jury credits Mr. Harris (as the Court must do on this motion), it will necessarily find that he was not in legal possession of the jacket.

The instant case is analogous to *Hines v. City of Yonkers*, in which the plaintiff disputed his arrest on gun possession charges (and, as here, the underlying possession). 08 CV 3126 (CM), 2011 WL 3055369 (S.D.N.Y. July 20, 2011). In *Hines*, this Court denied qualified immunity to the defendant officers on the basis of a fundamental fact dispute like the one at issue here. *Id.* at *4 ("The fact that a gun was found by the rock on the embankment path is certainly circumstantial evidence favoring the officers' account; however, Hines has raised a genuine issue of fact about whether he was responsible for putting the gun where it was found.").

Since plaintiff's version of the events includes disputed facts that, if credited, would show the intentional deprivation of a well-established Constitutional right of which a reasonable officer would have known, *see, e.g., Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) ("Without a doubt, the right not to be arrested without probable cause is clearly established."), reasonable officers could never disagree as to the lawfulness of such conduct and qualified immunity is unavailable at this stage. *See Zellner*, 494 F.3d at 374 ("[Since] the jury was not compelled - and hence the court was not permitted - to find that Zellner had made some downward movement on his own… there was nothing for defendants to interpret in a way that gave them even arguable probable cause."); *Walczyk v. Rio*, 496 F.3d 139, 166-67 (2d Cir. 2007) (Sotomayor, J., concurring); *see also Woods v. Goord*, 01-CV-3255 (SAS), 2002 WL 731691, at *10 (S.D.N.Y. April 23, 2002). Therefore, summary judgment on qualified immunity grounds should be denied.

<u>POINT III</u>

<u>FABRICATING EVIDENCE VIOLATES THE
CONSTITUTION</u>

"Any reasonable police officer knows that it violates a subject's constitutional rights to lie about a fact in order to create the illusion of probable cause." *Hines*, 08 CV 3126 (CM), 2011 WL 3055369 at *4.

Defendants offer a flawed argument on the fair trial claim in their motion. First, on a motion intended to be limited to the issue of qualified immunity where discovery has not been taken, defendants improperly argue the merits and fault plaintiff for a lack of evidence.

Second, defendants' suggestion that only "admissible" evidence can form the basis of a fabricated evidence claim is worthy of rejection:

> UC 39's argument that evidence must be admissible to form the basis of a denial of the right to fair trial claim is based on a misreading of *Jovanovic* and its predecessors. In reframing the elements of a denial of a right to fair trial, the panel in *Jovanovic* characterized "likely to influence a jury's decision" as a separate numbered element of the claim. UC 39's argument here is premised on an interpretation of that element as requiring a showing that the information must be likely to get to the jury. However, that element is properly understood to require a showing of the materiality of the false information presented—that the information would likely influence the jury *if* it arrived at a jury—as a careful reading of *Ricciuti* and *Jovanovic* reveals...In *Ricciuti,* the phrase 'likely to influence a jury's decision' evidently describes the materiality of the information. It does not require that the falsified evidence be likely to be presented to a jury—again, the cause of action accrues when the information is presented to the *prosecutor,* not when it is presented to the jury.

*Garnett v. Undercover Officer C0039*, 13 CV 7083 (GHW), 2015 WL 1539044, *8 (S.D.N.Y. Apr. 6, 2015) (emphasis in original) (citations omitted).

Third, defendants incorrectly identify criminal court arraignment as the *sine qua non* of a fair trial claim. There is no support in the law for this position. Indeed, under *Ricciuti* and its progeny, a post-arraignment deprivation of liberty is not required to sustain a fair trial claim and a "criminal defendant's right to a fair trial is violated *when an investigating official creates false information likely to influence a jury's decision and forwards that information to prosecutors.*" *Lopez v. City of New York*, 105 F. Supp. 3d 242, 246-47 (E.D.N.Y. 2015) (citing *Ricciuti v. New York City Transit Auth.,* 124 F.3d 123, 130 (2d Cir. 1997) (emphasis added)); *see Dowling v. City of New York*, 11 CV 4954 (NGG), 2013 WL 5502867, *6 (E.D.N.Y. Sept. 30, 2013) ("A prosecution may be required for a claim of malicious prosecution, but no precedent exists, in this circuit or otherwise, for dismissing a § 1983 claim for deprivation of the right to a fair trial [because no prosecution took place.]") (quoting *Keller v. Sobolewski,* 10 CV 5198 (FB), 2012 WL 4863228, *4 (E.D.N.Y. Oct. 12, 2012) (internal quotation marks omitted)). Where an ACD was accepted at arraignment and thus no prosecution occurred, the *Dowling* court noted that "[i]nstead, the limiting factor appears to be not whether the plaintiff went to trial but whether the falsification caused material harm." *Id.* (quoting *Schiller v. City of New York* (multiple numbers), 2008 WL 200021, *10 (S.D.N.Y. Jan. 23, 2008) (internal quotation marks omitted). Here, the defendant's forwarding of false paperwork to the

DA caused Mr. Harris to go to Court out of the fear of the issuance of an arrest, a constitutionally meaningful constraint on his liberty.

Here, crediting Mr. Harris's testimony that he did not possess the jacket, the officers' statements to the DA claiming that they saw him drop it violated his fair trial rights. *See* DP Memo, Johnson Decl., Exhibit L ("Detective Magliano...observed Mr. Harris drop the jacket to the floor."). Such fabricated direct observations would certainly come before the judge or jury in a criminal trial and are sufficient to support this claim.

Accordingly, defendants' motion for summary judgment on plaintiff's fabrication of evidence claim should be denied.

## POINT IV

## PLAINTIFF HAS PROSECUTED THE ACTION

Defendants' request for a failure to prosecute dismissal is procedurally and substantively defective. Their argument ignores both the applicable burden of proof and the standard for dismissal under Rule 41(b).

Assuming that – as here – plaintiff has stated a claim for false arrest, it is the defendants' burden to establish at least arguable probable cause. *See, e.g., Flores v. City of Mt. Vernon*, 41 F.Supp.2d at 439 (S.D.N.Y. 1999). Under such circumstances, the basic premise for defendants' dismissal argument is inapposite.

Plaintiff answered every question posed to him at his deposition, except those questions that concerned the conspiracy allegations underlying the unrelated pending indictment that Mr. Harris is facing in the Southern District of New York - facts unknown to his arresting officers on May 7, 2015 and not bearing on the instant dispute. This conduct was proper. *United States v. Certain Real Prop. & Premises Known as 4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d 78, 82 (2d Cir. 1995) ("[C]ourts have repeatedly held that the privilege against self-incrimination justifie[s] a person in refusing to answer questions at a deposition...") (quoting 8 Charles A. Wright, Arthur R. Miller and Richard L. Marcus, *Federal Practice and Procedure* § 2018, at 273 (2d ed. 1994)).

Further, plaintiff's decision did not prejudice defendants, as the allegations in the indictment are a matter of public record. Critically, defendants have failed to offer any evidence that the officers who arrested Mr. Harris on May 7, 2015 knew anything of the later-indicted allegations at that time. Here, at the summary judgment stage, defendants were free to offer affidavits or other supporting materials to show they possessed such knowledge but failed to do so.

In the Second Circuit, there are five factors to weigh when considering a failure to prosecute application:

> (1) the plaintiff's failure to prosecute caused a delay of significant duration; (2) plaintiff was given notice

> that further delay would result in dismissal; (3)
> defendant was likely to be prejudiced by further
> delay; (4) the need to alleviate court calendar
> congestion was carefully balanced against plaintiff's
> right to an opportunity for a day in court; and (5)
> the trial court adequately assessed the efficacy of
> lesser sanctions.

*Lewis v. Rawson*, 564 F.3d 569, 576 (2d Cir. 2009). On the merits, even if the privilege assertion was deemed improper, none of the factors favor dismissal. There has been no delay in the prosecution of this case. Defendants never notified plaintiff that they intended to seek dismissal on failure to prosecute grounds before filing their motion, and plaintiff has not received any notice from the Court. Defendant has suffered no prejudice from the privilege assertion, as the information is not probative of the instant dispute and can be readily obtained from other sources. Lastly, if the Court determined that plaintiff's privilege assertions were improper, there are many remedies available short of dismissal.

Accordingly, plaintiff respectfully submits that he has not failed to prosecute his claims and defendants' application on this ground should be denied.

## POINT V

### PLAINTIFF'S    BIAS-BASED    PROFILING CLAIM IS WITHDRAWN

Upon research by counsel in connection with the instant opposition, plaintiff has discovered that his bias-based profiling claim is not viable on this record.

Accordingly, plaintiff voluntarily withdraws this claim and consents to removal of the City of New York as a defendant.

<u>CONCLUSION</u>

For the foregoing reasons, plaintiff respectfully requests that the Court deny defendants' motion in its entirety, and grant such other and further relief as the Court deems just and proper.

Dated:  New York, New York
          June 15, 2016

HARVIS & FETT LLP

_____
Gabriel P. Harvis
305 Broadway, 14th Floor
New York, New York 10007
(212) 323-6880
gharvis@civilrights.nyc

*Attorneys for plaintiff*