UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/2/16

JONATHAN HARRIS,

    Plaintiff,

    -against-

CITY OF NEW YORK, *et al.*,

    Defendants.

No. 15-cv-8456 (CM)

## MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND FOR FAILURE TO PROSECUTE

McMahon, C.J.:

Jonathan Harris ("Plaintiff") brings this action under 42 U.S.C. Section 1983 against Detective Magliano, Police Officer Noce and Detective Taylor of the New York City Police Department ("NYPD") and the City of New York (collectively, "Defendants"). Plaintiff has also sued ten John and Jane Doe NYPD officers, whose real names Plaintiff has not yet identified; no *Valentin* order has yet issued, an oversight the Court will correct at the end of this opinion.

Plaintiff alleges that Defendants violated his Fourth, Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution, as well as New York City Administrative Code, by frisking him without reasonable suspicion, arresting him without probable cause, creating false evidence against him, failing to intervene and prevent the above acts, and engaging in race-based profiling.

Defendants have moved for partial summary judgment on the issues of qualified immunity (as to the named individual defendants) and municipal liability (as to the City of New

1

York). Defendants also argue that Plaintiff's action should be dismissed because he has failed to prosecute it.

For the reasons that follow, Defendants' motion for partial summary judgment is denied; their motion for failure to prosecute is also denied.

## BACKGROUND

### A. The Facts

The following facts include only those that the Court considers relevant to Plaintiff's Section 1983 action, and are deemed undisputed unless indicated in his response to Defendants' Rule 56.1 Statement that they are disputed. The only evidence, aside from the complaint, that will be considered on this pre-answer motion is the deposition testimony of the Plaintiff, which is attached to the Declaration Gabriel P. Harvis at Exhibit 1, and is referred to hereafter as "Pl.'s EBT." References to documents filed by police officers who may have been involved in the arrest are part of the police side of the story – which is not yet ripe for the telling. *See infra* Section B.

### 1. *Plaintiff's Warrantless Arrest*

At about 11:36 p.m. on May 7, 2015, police were called to the area of West 64th Street and West End Avenue in New York, New York to investigate a 911 call reporting that a black male, standing approximately five feet eight inches tall, wearing a black hooded sweatshirt or jacket and black sweatpants, had a gun in his waistband. Defs.' Statement of Undisputed Facts ("Defs.' 56.1") ¶ 5, ECF No. 26; Pl.'s Resp. to Defs.' Statement ("Pl.'s Resp. 56.1") ¶ 5, ECF No. 32. The 911 caller reported that the suspect was located in a park behind the Amsterdam Houses, Defs.' 56.1 ¶ 5; Pl.'s Resp. 56.1 ¶ 5, subsidized public housing on the Upper West Side of Manhattan which the Court judicially notices as being located in the area of the bordered by

2

65th street to the north, 61st street to the south, West End Avenue to the west, Amsterdam Avenue to the East.

Two or more NYPD officers, one of whom was apparently Defendant Taylor and one was Officer Noce, responded to the 911 call. They traveled to the area of West 64th Street and West End Avenue and saw the Plaintiff standing next to two females. Defs.' 56.1 ¶¶ 6, 8–9; Pl.'s Resp. 56.1 ¶¶ 6, 8–9. Plaintiff claims that he was in the area around 217 West 63rd Street and Amsterdam Avenue to visit a friend. Pl.'s EBT at 41:13–18.

In a report filed by Detective Taylor (which is not supposed to be in evidence on this pre-answer motion), the police reported that Plaintiff had on a black "sweat shirt or jogging jacket," black "sweat/jogging clothes," sneakers, and headgear of "unknown color." Decl. of Paul H. Johnson to Defs.' Mem. L. in Supp. of Mot. to Dismiss ("Johnson Decl.") ¶ 3, ECF No. 27, Ex. C at 3. Plaintiff testified that he might have been wearing a sweatshirt. Pl.'s EBT at 45:18–20.

Plaintiff testified that he recognized one of the police officers from a prior encounter, Pl.'s EBT at 46:22–25, and the police struck up a brief conversation upon approaching Plaintiff. Pl.'s EBT at 48:2–3. The parties disagree about what transpired immediately after the police officers first began speaking to Plaintiff; but on this pre-answer, pre-discovery motion for dismissal on qualified immunity grounds, we are considering *only* the facts as told by the Plaintiff in his complaint and in the deposition that fleshed out his allegations in detail. *See infra* Section B.

According to Plaintiff, after the officers approached him and began speaking to him, the officers patted him down and, after finding nothing on Plaintiff's person, walked back toward their police car. Pl.'s Resp. 56.1 ¶ 12. Seeing the police officers walk away, Plaintiff also began walking away toward a nearby building. Pl.'s EBT at 49:1–8.

3

At some point during the encounter, the police officers stopped Plaintiff from walking away. They then went to inspect a jacket or sweatshirt that hung from a fence approximately twelve to fifteen feet away from Plaintiff. *See* Pl.'s EBT at 49:12–16.[1] One of the officers[2] searched the jacket and pulled something (later identified as a scalpel with a green handle) out from inside. Defs.' 56.1 ¶ 17; Pl.'s Resp. 56.1 ¶ 17. One of the officers asserted that object belonged to Plaintiff; Plaintiff said it did not. Defs.' 56.1 ¶¶ 17–18; Pl.'s Resp. 56.1 ¶¶ 17–18.

Detective Taylor then placed Plaintiff under arrest for the misdemeanor offense of possessing a dangerous cutting instrument in violation of N.Y. Penal Law § 265.01(1). Defs.' 56.1 ¶¶ 20–21, 29; Pl.'s Resp. 56.1 ¶¶ 20–21, 29. One of the police officers then took photographs of Plaintiff, Defs.' 56.1 ¶ 22; Pl.'s Resp. 56.1 ¶ 22, and Plaintiff felt that the officers were making fun of him while doing so, Am. Compl. ¶ 20.

Plaintiff was then brought to the 20th Precinct. After a matter of hours,[3] he was given a desk appearance ticket charging him with Criminal Possession of a Weapon in the Fourth Degree in violation of N.Y. Penal Law §265.01(1), and sent on his way. Defs.' 56.1 ¶ 31; Pl.'s Resp. 56.1 ¶ 31.

Ultimately, the District Attorney for New York County declined to prosecute Plaintiff, on the ground that the scalpel was not a weapon described in the section of the Penal Law that

---

[1] Defendants say it was ten to fifteen feet away, Defs.' 56.1 ¶¶ 13–16; Pl.'s Resp. 56.1 ¶¶ 13–16, but that is irrelevant.

[2] From Defendants' improperly submitted evidence, we know it was Police Officer Noce.

[3] Plaintiff testified in his deposition that he spent "several hours," Pl.'s EBT at 63:1–3, or "over two hours" in custody, *id.* at 57:3–4. Although it is irrelevant at this stage, Defendants assert that Plaintiff was in custody for approximately one hour and fifty-six minutes. Pl.'s Resp. 56.1 ¶ 33.

Plaintiff was charged with violating. Defs.' 56.1 ¶ 34; Pl.'s Resp. 56.1 ¶ 34; Johnson Decl. ¶ 12, Ex. L at 2.[4]

### 2. *Plaintiff's Injuries*

Plaintiff asserts that he suffered damage as a result of Defendants' actions, in that he "was deprived of his liberty, suffered emotional distress, mental anguish, fear, anxiety, embarrassment, humiliation, and damage to his reputation." Am Compl. ¶ 26.

### 3. *Plaintiff's Suit*

Plaintiff's amended complaint alleges five causes of action: unlawful stop-and-frisk in violation of the Fourth and Fourteenth Amendments, false arrest in violation of the Fourth and Fourteenth Amendments, denial of a right to fair trial in violation of the Sixth and Fourteenth Amendments and the Due Process Clause of the Fifth Amendment, failure to intervene in violation of the Fourth, Fifth, Sixth and Fourteenth Amendments, and bias-based profiling in violation of Section 14-151(c)(i) and (ii) of the Administrative Code of the City of New York. ECF No. 8.

Named Defendants Magliano, Noce, and Taylor have moved for partial summary judgment on the ground that they are entitled to qualified immunity as to Plaintiff's claims for false arrest/false imprisonment[5] and denial of his right to a fair trial. ECF No. 20. They do not

---

[4] N.Y. Penal Law § 265.01(1) provides that "A person is guilty of criminal possession of a weapon in the fourth degree when . . . He or she possesses any firearm, electronic dart gun, electronic stun gun, gravity knife, switchblade knife, pilum ballistic knife, metal knuckle knife, cane sword, billy, blackjack, bludgeon, plastic knuckles, metal knuckles, chuka stick, sand bag, sandclub, wrist-brace type slingshot or slungshot, shirken or 'Kung Fu star.'"

[5] Although as noted below, Plaintiff does not allege a false imprisonment count in his Amended Complaint. However, they are, in effect, the same things. *Blanchfield v. State of N.Y.*, 104 Misc.2d 21, 427 N.Y.S.2d 682 (1980); *see also Fincher v. County of Westchester*, 979 F. Supp. 989, 998 (S.D.N.Y. 1997); 59 N.Y. Jur. 2d False Imprisonment § 1 (2016) ("False arrest and false imprisonment are largely synonymous").

5

move for dismissal of the other claims asserted by Plaintiff on qualified immunity grounds. At the same time, the City moved for summary judgment on Plaintiff's claim for municipal liability.

In accordance with this Court's Individual Rules, Plaintiff was deposed and the motion for summary judgment was fully briefed thereafter. *See* ECF Nos. 22–23. In connection with that briefing the Corporation Counsel has once again gone well beyond the record that should be before the Court – consisting of the complaint, the charging instrument, and plaintiff's deposition testimony – and has included arrest reports, a copy of an indictment, a press release, a criminal appearance history sheet, a prisoner arraignment form, a desk appearance ticket, a property clerk invoice, and a letter of declination of prosecution. The Court will consider only that evidence that is properly considered on a pre-answer motion for summary dismissal on the ground of qualified immunity.

## DISCUSSION

### A. Failure to Prosecute

The Court will first address Defendants' motion to dismiss under Federal Rule of Civil Procedure 41(b) for failure to prosecute. Defendants assert that Plaintiff has failed to prosecute his case because, during his deposition, he invoked his Fifth Amendment right against self-incrimination when asked questions about his gang affiliations. Defs.' Mem. L. in Supp. of Mot. for Summ. J. ("Defs.' Mem.") 22–24, ECF No. 25.

Defendants' argument is as specious as it is illogical. The privilege against self-incrimination may be invoked by an individual in any civil when the answer may tend to incriminate in future or pending criminal proceedings. *Baxter v. Palmigiano*, 425 U.S. 308, 316 (1976) (citing *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973)). While invoking privilege in a civil case can have implications for a litigant, exercising one's constitutional right against self-incrimination is not "failing to prosecute a case." Failing to prosecute is defined in Federal Rule

of Civil Procedure 41(b) and the numerous cases that have been decided thereunder – all of which Defendants completely ignore in their utterly frivolous motion. There are clearly-established standards for deciding whether to dismiss case for failure to prosecute, *see United States ex rel. Drake v. Norden Sys, Inc.*, 375 F.3d 248, 254 (2d Cir. 2004); Fed. R. Civ. P. 41(b), and the City has not indicated that any of those standards, let alone all or most of them, is met here.

Defendants' request to dismiss Plaintiff's case for failure to prosecute is denied.

B. Standard for Summary Judgment on the Ground of Qualified Immunity

The Court turns next to the substantive arguments in Defendants' motion to dismiss. Under Federal Rule of Civil Procedure 56, the Court will grant summary judgment if the evidence offered shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The Court views the record in the light most favorable to the non-movant and resolves all ambiguities and draws all reasonable inferences against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Donahue v. Windsor Locks Bd. of Fire Commn'rs*, 834 F.2d 54, 57 (2d Cir. 1987). When qualified immunity is invoked as the basis for summary judgment, the same standard applies. However, there are special considerations when a motion for summary judgment is made on that ground.

Qualified immunity exists to protect government employees from civil liability where performance of their discretionary functions "does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

7

When confronted with a qualified immunity defense, the Supreme Court in *Saucier v. Katz*, 533 U.S. 194 (2001) has indicated that a court should engage in a two-prong inquiry: (1) The court should first determine whether the plaintiff alleged facts sufficient to demonstrate a violation of a constitutional right; and (2) if so, the court should then decide whether the right was "clearly established" at the time of the alleged misconduct. *See Saucier*, 533 U.S. at 201. The immunity defense is available so long as reasonably competent officials could disagree about whether the conduct at issue would violate clearly established rights. *Carrier v. Lussier*, 955 F.2d 841, 846 (2d Cir. 1992); *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In *Saucier*, the Supreme Court also indicated that the issue of qualified immunity should be decided at the earliest possible opportunity – preferably at the outset of the case. Thus, the availability of qualified immunity is ideally decided at "a point at which plaintiff's well pleaded allegations are assumed to be true, and defendant's version of the facts is immaterial." *Espinoza v. City of N.Y.*, No. 11-cv-2108, 2012 WL 4761565, at *3 (S.D.N.Y. Aug. 3, 2012); *cf. Pearson v. Callahan*, 555 U.S. 223 (2009).

In *Stephenson v. John Doe*, 332 F.3d, 68 68 (2d Cir. 2003), the Second Circuit explained that when determining a motion to dismiss on qualified immunity grounds in advance of full merits discovery, the plaintiff's version of the facts (in this case, elaborated in his deposition testimony) is assumed to be true. *See also Espinoza*, 2012 WL 4761565, at *3. The truth of the plaintiff's allegations is assumed "without regard to any objection defendants may have to the truth of plaintiff's version of events." *Quezada v. Roy*, No. 14-cv-4056, 2015 WL 5970355, at *10 (S.D.N.Y. Oct. 13, 2015); *see also Tellier v. Fields*, 280 F.3d 69, 74 (2d Cir. 2000); *Plunkett v. City of N.Y.*, No. 10-cv-6778, 2011 WL 4000985, at *6 (S.D.N.Y. Sept. 2, 2011). In deciding the issue of qualified immunity, "the defendants' version of the facts is absolutely irrelevant."

8

*Bolden v. Vill. of Monticello*, 344 F. Supp. 2d 407, 411 (S.D.N.Y. 2004). Accordingly, this Court does not take testimony from defendants or otherwise consider their version of events. *Quezada*, 2015 WL 5970355, at *11.

Pursuant to this Court's Individual Rules, when any defendant raises a qualified immunity defense, I insist that the plaintiff amplify the "short, plain statement" in the complaint with testimony that fully fleshes out his story. For purposes of this aspect of the motion (which is really a motion for summary judgment), the Court relies on evidence in the amended complaint as amplified by Plaintiff's deposition testimony.

This Court frequently finds that the City, as the defendant in Section 1983 cases, will conflate qualified immunity with arguments relating to the merits of a claim. Often, defendants will file a notice of motion for summary judgment on the ground of qualified immunity and proceed to make arguments for dismissal of plaintiff's claims that have nothing to do with qualified immunity. For instance, defendants may argue that the plaintiff fails to plead facts sufficient to make out a constitutional violation, or that things did not happen in quite the way the plaintiff says they did. The instant motion raising the qualified immunity defense is no exception.

Thus, the Court finds it necessary to again remind Defendants of two things. First, an official is often entitled to dismissal or summary judgment "not because of qualified immunity, but because he did nothing wrong." *Quezada*, 2015 WL 5970355, at *10 (quoting *Dolson v. Vill. of Washingtonville*, 382 F. Supp. 2d 598, 602 (S.D.N.Y. 2005)). Second, if the police officers have to tell their story in order to obtain qualified immunity, the motion should not be made at a time when the Court must assume that the plaintiff's story is true. It should abide the filing of an answer and discovery.

9

## C. Application

### 1. *Qualified Immunity and False Arrest*

In analyzing Section 1983 claims for unconstitutional false arrest, federal courts look to the law of the state in which the arrest occurred, not federal law. *See Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004); *Washpon v. Parr*, 561 F. Supp. 2d 394, 402 (S.D.N.Y. 2008). Under New York law, "a plaintiff claiming false arrest must show, *inter alia*, that the defendant intentionally confined him without his consent and without justification." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996); *see also Covington v. City of N.Y.*, 171 F.3d 117, 122 (2d Cir. 1999) (noting that a Section 1983 claim for false arrest based on the Fourth Amendment is substantially the same for false arrest under New York law). The existence of probable cause to arrest constitutes justification and "is a complete defense to an action for false arrest." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994); *see also, e.g.*, *Broughton v. State of N.Y.*, 335 N.E.2d 310, 315 (N.Y. 1975).

In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime. *See, e.g.*, *Dunaway v. New York*, 442 U.S. 200, 208 n.9, (1979); *Wong Sun v. United States*, 371 U.S. 471, 479 (1963); *Brinegar v. United States*, 338 U.S. 160, 175–76 (1949); *see also* N.Y. Crim. Proc. Law § 140.10(1). The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers. *Weyant*, 101 F.3d at 852 (citing cases).

"Even if there was no probable cause to arrest, a police officer may nonetheless be immune from a claim of false arrest under the doctrine of qualified immunity if 'either (a) it was

10

objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Washpon*, 561 F. Supp. 2d at 403 (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)). That is what we refer to as "arguable probable cause."

In this case, the record at present reflects that, at the time of Plaintiff's arrest, (1) a 911 caller had reported that a five-foot-eight black male wearing a black hooded sweatshirt and black sweatpants was in a park behind the Amsterdam Houses and had a gun tucked into his waistband; (2) Plaintiff's manner of dress and physical appearance were generally consistent with the description given by the 911 caller; (3) Plaintiff was found standing in the general area that the 911 caller indicated, and at around the same time of night; (4) police found no evidence of weapons or contraband on Plaintiff's person after performing a pat-down; (5) approximately ten to fifteen feet from where Plaintiff stood, a jacket that has in no way been associated with the Plaintiff hung from a fence; (6) the Police searched that jacket and found a green-handled scalpel; and (7) Plaintiff denied owning either the jacket or the scalpel.

That is the entire story before the Court.

On that set of facts, there was neither actual nor arguable probable cause to arrest plaintiff, and no reasonable police officer could possibly have thought there was.

The Plaintiff was arrested for possession of a weapon. Not only was the item seized by the police not a weapon as described in the statute (according to the Assistant District Attorney), but the Plaintiff was not in possession of the "weapon" – it was found in the interior pocket of a jacket that was not being worn by Plaintiff, and that was hanging at a considerable distance from Plaintiff – farther than he could have reached with his arm. Until we hear from the police officers, we cannot know whether they saw something that caused them to associate the jacket

11

with Plaintiff – perhaps, for example, one of them saw Plaintiff remove the jacket – or whether they saw Plaintiff handle the "weapon" or do anything at all that might indicate that he had custody or control over it. But if all they saw was a man in a black sweatshirt who did not have a gun in his waistband, and a jacket hanging some distance from plaintiff that Plaintiff was not wearing and denied owning, then Plaintiff stands an excellent chance of winning this case.

In their brief, the police officers seek to justify the arrest on the ground that photographs of Plaintiff taken after his arrest revealed that he was a gang member. They also claim that they called the 20th Precinct, again after Plaintiff was arrested, and learned that Plaintiff was allegedly a member of the 18 Park Gang, that Plaintiff had a tattoo with the inscription "M.O.B.," and went by the nickname "Eggy."

None of this evidence from the police can be discerned from either the complaint or from Plaintiff's testimony. Furthermore, even if it could be, it would not be relevant to the issue of qualified immunity. That is because the "reasonableness of official suspicion must be measured by what the officers knew *before they conducted their [seizure]*." *Florida v. J.L.*, 529 U.S. 266, 271 (2000) (emphasis added). If the officers' evidence were to be considered, it would clearly run afoul of this rule, as the Corporation Counsel knows full well. Because that information could not possibly have entered into the minds of the arresting officers at the time they made their arrest, it cannot enter into the Court's probable cause calculus, either.

The fact that Plaintiff had previously seen one of the officers (a fact confirmed by one of the officers, though our knowledge of his testimony is premature) does not alter the Court's conclusion that the police were not entitled to qualified immunity as a matter of law, because there was neither actual nor arguable probable cause to arrest Plaintiff. Of course, facts might emerge at some later date, when the officers are deposed, that would have justified the officers'

12

belief that the jacket was associated with Plaintiff and that it contained a weapon. But those facts, if they exist, are not presently in the record, nor could they properly be in the record on a pre-answer qualified immunity motion, when the officers' version of events is irrelevant.

Defendants rely in part on *arguable* probable cause, but that is simply wrong. Our Court of Appeals has explicitly and repeatedly insisted "'Arguable' probable cause" must "not be misunderstood to mean 'almost' probable cause." *See Jenkins v. City of N.Y.*, 478 F.3d 76, 87 (2d Cir. 2007)). Instead, the "essential inquiry in determining whether qualified immunity is available to an officer accused of false arrest is whether it was objectively reasonable for the officer to conclude that probable cause existed." *See id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 644 (1987)). "There should be no doubt that probable cause remains the relevant standard. If officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause, the fact that it came close does not immunize the officer." *Id.* On the facts in the record as it presently exists, arguable probable cause was as lacking as actual probable cause.

Defendant's motion for summary judgment dismissing Plaintiff's claim for false arrest on the ground of qualified immunity is, therefore, denied. Denial is without prejudice to refiling at a later stage in this litigation, when the officers have told their stories and when the Court is free to consider those stories.

## 2. *Qualified Immunity and Right to Fair Trial*

Plaintiff alleges that he was arrested and deprived of his liberty on the basis of fabricated evidence, and that police provided that fabricated evidence to prosecutors. On this basis, Plaintiff argues that Defendants violated Plaintiff's constitutional right to fair trial. Am Compl. ¶¶ 22, 33–37; Pl.'s Opp'n to Defs.' Mem. L. in Supp. of Summ. J. 10–13, ECF No. 29.

13

"It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer." *Zahrey v. Coffey*, 221 F.3d 342, 355 (2d Cir. 2000). The Second Circuit has permitted a claim under Section 1983 for violation of the right to a fair trial to proceed even where no trial took place. *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997). While cases in this Circuit are inconsistent over whether this claim arises under the Sixth Amendment right to a fair and speedy trial, or under the due process clauses of the Fifth and Fourteenth Amendments, *see Morse v. Spitzer*, No. 07-cv-4793, 2013 WL 359326, at *3 (E.D.N.Y. Jan. 29, 2013) (citing cases), it is settled law that a plaintiff may bring a viable Section 1983 claim for damages based on fabrication of evidence where an officer's post-arrest fabrication of evidence results in a restraint on the plaintiff's liberty, *Zahrey*, 221 F.3d at 350. The Second Circuit reached the same result "when the fabricated information at issue is the officer's own account of his or her observations of alleged criminal activity which he or she conveys to prosecutors." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 268 (2016).

A plaintiff can establish a fabricated-evidence claim by proving that a police officer knowingly supplied false facts to a prosecutor. *Ricciuti*, 124 F.3d at 130. The claim accrues "when fabricated information is forwarded to a prosecutor and results in the deprivation of a defendant's liberty." *Soomro v. City of N.Y.*, No. 13-cv-0187, 2016 WL 1266069, at *5 (S.D.N.Y. Mar. 30, 2016). Probable cause is no defense to such a claim, *Zahra*, 221 F.3d at 355, and qualified immunity is unavailable where "the action violates an accused's clearly established constitutional rights, and no reasonably competent police officer could believe otherwise," *Ricciuti*, 124 F.3d at 130.

Construing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, I find that there are genuine issues of material fact as to

14

whether the police fabricated evidence in order to get the District Attorney to charge Plaintiff. Plaintiff asserts that Defendants told the Assistant District Attorney that the scalpel belonged to Plaintiff. But on the facts presently before me there is absolutely no basis on which a police officer could have concluded that the scalpel belonged to Plaintiff. Plaintiff did not have it on his person; he was not wearing and he denied owning the jacket in which it was found; and there is no independent evidence that his denial was untrue. Therefore, Plaintiff has stated a claim for denial of his right to a fair trial (even though he never had a trial, because his case was dismissed well before trial). And that claim cannot be summarily dismissed on the ground of qualified immunity, because no reasonable police officer could have thought that telling the District Attorney's office that Plaintiff possessed the "weapon" when the police had no such evidence was permissible police behavior.

Again, the motion is denied without prejudice; in the event that facts emerge during discovery that would have given the police some basis to make their assertion to the Assistant District Attorney, the Defendants may wish to renew it.

D. Municipal Liability

Defendants assert that summary judgment is proper on Plaintiff's municipal liability claim on the ground that Plaintiff has failed to show a primary constitutional violation. Unfortunately for the City, the Court has concluded, not only that Defendants are not (yet) entitled to summary judgment on the ground of qualified immunity, but also that unless facts emerge to justify the arrest, Plaintiff has indeed shown a primary constitutional violation – namely, false arrest. Thus the City's underlying premise is just plain wrong at this stage in the game, and its motion must be denied. It is premature, and it should never have been made in the first place.

Furthermore, this is a case in which a *Monell* failure to train claim might well survive summary judgment.

To sustain a claim for municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), Plaintiff must adduce evidence that the violation or violations of his constitutional rights resulted from a municipal policy, custom, or practice, as required to hold the City liable. *See id.* at 690–91 (1978). In other words, "there must be a 'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 531 (S.D.N.Y. 2012) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). Courts examining the adequacy of a *Monell* engage in a two-step process that first inquires whether a municipal policy or custom is alleged, and if so, whether the allegations demonstrate that such policy or custom was the reason for the alleged injury. *See Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 439 (S.D.N.Y. 2013).

To establish a municipal policy or custom, a plaintiff must allege one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by the government officials responsible for establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policy makers to train or supervise subordinates.

*Vasconcellos v. City of N.Y.*, No. 12-cv-8445, 2014 WL 4961441, at *11 (S.D.N.Y. Oct. 2, 2014) (quoting *Harper v. City of N.Y.*, No. 11-cv-4333, 2013 WL 432599, at *4 (S.D.N.Y. Jan. 31, 2013)).

Here, the Plaintiff states that the City is "responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants." Am. Compl. ¶ 9. If no additional facts turn up, then the very thought that these officers might have believed they had probable cause to arrest

16

Plaintiff suggests that they were poorly trained indeed. Against the backdrop of the recently abandoned City policy regarding stop and frisk, this failure to train might well be indicative of a municipal policy. Certainly discovery will be required before any motion would be ripe.

Defendants' motion for summary judgment on Plaintiff's municipal liability claim is denied.

## CONCLUSION

In this Opinion, the Court denies Defendants' motion for failure to prosecute. Defendants are not entitled to qualified immunity as to Plaintiff's false arrest claim, and the Court also denies Defendants' motion for summary judgment on Plaintiff's right-to-fair-trial and municipal liability claims. And since Defendants failed to assert a qualified immunity defense as to Plaintiff's unlawful stop-and-search and failure to intervene claims, those claims remain active in this lawsuit.

Insofar as Plaintiff voluntarily withdrew his bias-based profiling claim under the New York City Administrative Code, that claim is no longer part of this lawsuit.

The Court also directs the City of New York, pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997), to ascertain the identities and service addresses of the John and Jane Doe Defendants that Plaintiff named in the amended complaint no later than sixty days after the filing of this Opinion. Plaintiff must then file an amended complaint naming the John and Jane Doe Defendants within thirty days of receiving information about those defendants from the City.

The Clerk of Court is respectfully directed to terminate the motion at Docket Number 20.

17

Dated: December 2, 2016

Colleen M. McMahon

U.S. District Judge

BY ECF TO ALL COUNSEL