```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK

In re:                                 :
                                          Docket #15cv8456
 HARRIS,                               : 1:15-cv-08456-CM-RLE

                    Plaintiff,         :

   - against -                         :

 THE CITY OF NEW YORK, et al.,         :
                                          New York, New York
                    Defendants.        : July 13, 2017

----------------------------------- :

                        PROCEEDINGS BEFORE
                  THE HONORABLE RONALD L. ELLIS
           UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:                 HARVIS, WRIGHT & FETT, LLP
                               BY:  GABRIEL HARVIS, ESQ.
                               305 Broadway, 14th Floor
                               New York, New York  10007


For Defendants:                NEW YORK CITY LAW DEPARTMENT
                               BY:  PAUL JOHNSON, ESQ.
                               100 Church Street
                               New York, New York  10007
```

```
Transcription Service: Carole Ludwig, Transcription Services
                       141 East Third Street #3E
                       New York, New York 10009
                       Phone:  (212) 420-0771
                       Fax:  (212) 420-6007
```

```
Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.
```

<u>INDEX</u>

<u>E X A M I N A T I O N S</u>

| <u>Witness</u> | <u>Direct</u> | <u>Cross</u> | <u>Re-<br>Direct</u> | <u>Re-<br>Cross</u> | <u>Court</u> |
|---|---|---|---|---|---|
| None | | | | | |

<u>E X H I B I T S</u>

| <u>Exhibit<br>Number</u> | <u>Description</u> | <u>ID</u> | <u>In</u> | <u>Voir<br>Dire</u> |
|---|---|---|---|---|
| None | | | | |

```
1                                                         3

2              THE COURT:  We're in the matter for a status

3    conference, Jonathan Harris versus the City of New York and

4    parties, 15cv8456.  Attorneys, please state your name for

5    the record.

6              MR. GABRIEL HARVIS:  Gabriel Harvis for the

7    plaintiff, good morning, Your Honor.

8              THE COURT:  Good morning.

9              MR. PAUL JOHNSON:  Paul Johnson for the

10   defendants.

11             THE COURT:  Good morning.

12             MR. JOHNSON:  Good morning.

13             THE COURT:  Okay. Well, this was referred by Judge

14   McMahon, I guess she characterizes it as a discovery

15   dispute, although it seemed pretty clear to me that she made

16   herself pretty clear as to what she wanted to happen. So I'm

17   not sure it qualifies as a dispute, it has to do with the

18   depositions of the officers, what's the story?

19             MR. HARVIS:  Well, Your Honor, I mean it's a

20   little bit, there's a little more to it than that.  Judge

21   McMahon did indicate that the Court wanted the depositions

22   held by the deadline and the defendants have provided dates

23   and we have depositions beginning tomorrow. The problem is

24   that they've all been scheduled to take place by the

25   deadline. So in the next two weeks we have five depositions
```

1                                                                          4

2   scheduled.

3           The problem is that we're now being called upon to

4   begin the depositions tomorrow without certain documents and

5   discovery that we believe we're entitled to, and so that's

6   really the concern now is that --

7           THE COURT:  Are they objected to?

8           MR. HARVIS:  Well, some of them were. I mean we

9   listed them in our June 20th letter to the Court at page 2,

10  and so I mean some of them I would argue aren't even subject

11  to objection, like a privilege log, for example.

12          THE COURT:  So when are the depositions starting

13  and who's supposed to be deposed?

14          MR. HARVIS:  So tomorrow we have Detective Taylor,

15  who is one of the defendants, and then they'll proceed on

16  the 18th, 21st, 26th and 27th.

17          THE COURT:  Okay.  And is there something that you

18  absolutely need for Detective Taylor?

19          MR. HARVIS:  Sure.  Well, what we had hoped for

20  was there, I mean there are a number of things here that

21  relate to Detective Taylor.  First of all, his photograph is

22  something that I had hoped to have in advance of his

23  deposition so I could show it to the plaintiff and get a

24  sense from him as to who Detective Taylor is in these

25  events, so that I could craft my examination around

5

1

2  plaintiff's allegations as to that detective. I was also --

3       THE COURT:  What's the problem with the

4  photograph?

5       MR. JOHNSON:  Your Honor, we didn't want the

6  photograph circulating in federal prison.  We consent that

7  he -- we also consent that he was at the scene and that he

8  was the arresting officer. So we don't understand why --

9       THE COURT:  I am sorry, what's that objection?

10      MR. JOHNSON:  The objection was, first off, we

11 didn't want the photograph circulating in a federal prison.

12      THE COURT:  I know, I understand what you don't

13 want, that's like somebody saying I object because it might

14 hurt me --

15      MR. JOHNSON:  No, we objected because we thought

16 it was irrelevant and unnecessary because we said that he

17 was at the scene and that he was the arresting officer, the

18 paperwork tells him what the arresting officer is, his

19 mobile tells you he was there, and that was our objection to

20 it.

21      THE COURT:  And what would be the problem with, is

22 this like an undercover cop?

23      MR. JOHNSON:  No, Your Honor, but it is, excuse

24 me, we weren't, there was no question about the defendant's

25 identity, so that's' why we were questioning why he needed

```
 1                                                          6
 2  the photograph, it's not that it could have hurt him, it's
 3  just we didn't see the need for it --
 4          THE COURT:  Well let me ask plaintiff's counsel,
 5  how did you propose to use this photograph specifically,
 6  what would you propose to do?
 7          MR. HARVIS:  Sure, Your Honor. So, I mean, this is
 8  probably, I would say, like the eighth time that we've dealt
 9  with this issue, my office.  And so what we would normally
10  do is the photograph would be introduced subject to
11  confidentiality, I would sit down with the plaintiff and
12  say, show the officer's photographs and say which one is
13  this person, where in the allegations does this person fit
14  in?  And that way I would know when I'm questioning the
15  officer what particular allegations of the plaintiff I
16  should be raising with that officer.
17          THE COURT:  Okay, so how does this constitute
18  circulating in a prison?
19          MR. JOHNSON:  Well, Your Honor, plaintiff's
20  already been deposed and asked what Brian Taylor's role in
21  this incident was, so we didn't --
22          THE COURT:  So now you're saying it's moot?
23          MR. JOHNSON:  It's moot, yes.
24          MR. HARVIS:  We didn't have the benefit of the
25  photograph, Your Honor, he doesn't know who Brian Taylor is,
```

1

2  it's just a name.  So --

3          MR. JOHNSON:  We asked him to describe who he was

4  talking about.  We asked him specifically about it and --

5          THE COURT:  And you stipulated that was Taylor?

6          MR. JOHNSON:  Yes.

7          THE COURT:  Okay, so what's the issue -- well,

8  then obviously, with respect to Taylor's participation,

9  you're saying you don't know what it is now, you're not

10  sure, you want to get something --

11          MR. HARVIS:  So, Your Honor, so at the deposition,

12  Mr. Harris described the officers.

13          THE COURT:  Right.

14          MR. HARVIS:  So we have descriptions of people,

15  but we have no way of matching those descriptions to

16  individuals. I have no idea what Brian Taylor looks like.

17  So when I get to the deposition tomorrow, I guess I could

18  bring the plaintiff's deposition and try and figure out

19  which of the descriptions he most appears like. But the fact

20  of the matter is, Rule 34 contemplates a production of

21  photographs, the material is relevant and non-privileged,

22  and, you know, we have a whole line of cases in this

23  district and the Eastern District that support the

24  production under these circumstances. So our position would

25  be that the burden is on the defendants to seek a protective

8

1    order if they think they have good cause to avoid production

2    of material.

3            THE COURT:  Well he seems to have a point there,

4    counsel.

5            MR. JOHNSON:  Yeah, Your Honor, I don't see how

6    that's necessary for this deposition. Those cases that he

7    refers to is where the officers are "John Doe" officers, and

8    here there is no question about who he is and what he sees

9    and he can match the description.

10           THE COURT:  Well, okay, I guess I'm compelled to

11   ask the question again, what is your objection?

12           MR. JOHNSON:  We just think it's unnecessary --

13           THE COURT:  You're saying it's not relevant.

14           MR. JOHNSON:  Not relevant, yes.  I'm not going to

15   produce, it's not going to lead to the production of any

16   evidence.

17           THE COURT:  You don't think it would aid the

18   lawyer in trying to determine what role Officer Taylor

19   played?

20           MR. JOHNSON:  Well, I think he can Detective

21   Taylor what role he played in the --

22           THE COURT:  And rely on Detective Taylor?

23           MR. JOHNSON:  If it turns out that he is wrong

24   then he can impeach him at trial, yes.

1

2          THE COURT:  It would be harder to impeach him if

3  he's not prepared.  On balance I don't see why you can't

4  just give him the photograph.  I mean I understand, look, I

5  don't want stuff about officers or anybody else circulating

6  in the prison, but here I have a lawyer who wants to show, I

7  mean, that would include a document. I mean you can make the

8  same argument about some document and the lawyer says, look,

9  I'm going to show my client and my client is going to tell

10  me where this fits in, you know. It seems to me to be

11  relevant in terms of aiding counsel in getting the narrative

12  from his client and as far as I can tell, the lawyer says

13  he's going to have it in his possession, I have no reason to

14  doubt that a lawyer is going to do that.  I mean I don't

15  think, I mean I had visions of him sending the picture to

16  the person in prison and saying what can you tell me about

17  this guy.  But under the circumstances it seems to me the

18  use that has been described is relevant and limited in scope

19  such that I don't see a basis for the objection.  Do you

20  have the photograph with you now?

21          MR. JOHNSON:  I have one at the office.

22          THE COURT:  Okay, you two will arrange to get it?

23          MR. HARVIS:  Yes, Your Honor.

24          THE COURT:  Okay, what's your next problem?

25          MR. HARVIS:  Your Honor, there's when an arrest

```
 1                                                        10

 2   report is prepared, usually there is first prepared a

 3   handwritten copy of the report.

 4            MR. JOHNSON:  To save Mr. Harvis time, there is no

 5   arrest report in this matter.

 6            THE COURT:  Wait a minute, okay --

 7            MR. JOHNSON:  If --

 8            THE COURT:  No, no, no, no, wait, just to be

 9   clear, I just want it, this is one of those things that I

10   have as a pet peeve, there should never be a situation where

11   one lawyer raises something and the other side says, no,

12   that's not a problem.  You've had, I mean this was referred

13   to me by Judge McMahon, it's been maybe twenty days.  If

14   there's an issue that you're raising now that he's going to

15   conceded and save time, you should have saved time before

16   you got here.  Now who, I'm not going to raise blame, but if

17   there is another thing that comes up where you say, okay,

18   here's another problem that I have, and he says I'll save

19   you some time or that's not a problem, or we're going to do

20   it, I'm not going to be very happy.

21            Now I don't know where the breakdown is, or if

22   there is no communication, but if you want to take a few

23   minutes and let me leave the bench, go over what it is that

24   you have as a problem, I suggest that because I do not want

25   to have a situation where plaintiff's counsel says here's my
```

11

issue, and defense counsel says, oh, that's not a problem.

Would you like to have a few moments?

MR. HARVIS:  I don't need any time, Your Honor,

but if --

THE COURT:  Everything else is still in

controversy?

MR. HARVIS:  As far as I know.

THE COURT:  Okay.

MR. HARVIS:  Yeah, I mean if I could just respond

to that. I mean, so, you know, when responding to discovery

demands, if a document doesn't exist, we would just ask that

the opposing parties so state so that we don't have to go to

the Court like here and try to make a whole motion and then

find out that there's a representation that the document

doesn't exist.

THE COURT:  Well that's a subset of what I just

said.

MR. HARVIS:  Yep.

THE COURT:  Okay.  Again, just to be clear, I have

defendant's representation that that's not going to happen

again in this conference.

MR. JOHNSON:  Well I would like to discuss with

Mr. Harvis if he wants to, I don't know what else he's going

to bring up.

```
 1                                                    12
 2            THE COURT:  I mean there are no -- counsel,
 3    counsel.  Counsel, we don't have conversations --
 4            MR. HARVIS:  I apologize, Your Honor.
 5            THE COURT:  Not unless I leave the bench.  Do you
 6    want me to leave the bench?
 7            MR. HARVIS:  I do not.
 8            THE COURT:  Okay.  all right, but let me give
 9    defense counsel an opportunity to, what plaintiff's counsel
10    just said I agree with. That is I don't think there should
11    be arguments over things that do not exist.  And, you know,
12    for example, I don't want somebody to say, okay, that would
13    be attorney/client privilege and then find out there's no
14    document, that's kind of ridiculous, okay?  So let's try not
15    to have that happen.
16            MR. JOHNSON:  I guess just one other thing. He did
17    mention a privilege log, we're not withholding anything for
18    privilege, we've mentioned that in our discovery responses.
19            THE COURT:  No, no, I'm just saying as an example.
20    To be completely frank with you, I've had someone from your
21    office say that to me, that they raised the privilege
22    argument then later on they said there were no privileged
23    documents.  I said well that doesn't make any sense.
24            Now, what other problems do you have, counsel?
25            MR. HARVIS:  Well, Your Honor, I mean I think that
```

1

2  actually leads to another problem because, as Your Honor

3  kind of indicated, I mean we have the specter of privilege

4  raised throughout these responses. I would say the majority

5  of defendant's responses to the discovery demands mention

6  that a certain privilege or another are implicated. So it's

7  hard for me to understand how to reconcile that with the

8  notion that a privilege log or a redaction log is not

9  appropriate in this case.

10          MR. JOHNSON:  Because we don't have any documents

11  that we're withholding.

12          THE COURT:  There are no documents, okay.

13          MR. JOHNSON:  Yes.

14          THE COURT:  Okay.  This list that's on page 2,

15  you're saying whenever you raise the specter privilege,

16  there are, in fact, no documents that are responsive to

17  these requests.

18          MR. JOHNSON:  Right.

19          THE COURT:  Okay, counsel, your turn.

20          MR. HARVIS:  Okay, I mean I would just note --

21          THE COURT:  You can go through them each anyway to

22  be sure.

23          MR. HARVIS:  I will, but I just wanted to mention,

24  I mean I think that we're entitled to know what the

25  redactions are, as well as the documents --

```
 1                                                    14
 2            THE COURT:  Well he said there were no documents.
 3  I assume that that means no documents, not redactions.
 4            MR. JOHNSON:  Right.
 5            MR. HARVIS:  Okay, well, just what I meant was for
 6  those documents that were produced with redactions, we just
 7  wanted to have a sense of what the redactions were that were
 8  made to the documents. So that's why --
 9            THE COURT:  Oh, you mean you've gotten some
10  documents, but they were redacted?
11            MR. HARVIS:  Some were, yes.
12            MR. JOHNSON:  Your Honor, I think I said in my
13  disclosures to them that the names of nonparty police
14  officers were redacted, birthdates, social security numbers.
15            THE COURT:  That's the only thing?
16            MR. JOHNSON:  Well, and according to their, when
17  you saw their log of disciplinary history, we redacted non-
18  relevant events like excessive force if there is no
19  excessive force in that matter.
20            THE COURT:  I mean did you know this?
21            MR. HARVIS:  Well, I mean we could probably piece
22  together some of what he's saying from looking at the
23  responses, but normally my practice would be if you are
24  going to make a redaction and it's going be based on
25  privileged, the Rule 26(B)(5) requires that you set out a
```

```
 1                                                    15
 2  table so that we can challenge the individual redactions if
 3  we think it's appropriate.
 4        MR. JOHNSON:  That's not redacting for privilege,
 5  that's redacting for relevance.  These are irrelevant to the
 6  claims at issue in the matter.
 7        THE COURT:  Well, if you do any redactions, the
 8  other side should know why you're redacting.
 9        MR. JOHNSON:  No, and I thought I made clear that
10  we redacted nonparty police officers, birthdates, social
11  security numbers and causes of claims in the disciplinary
12  file that are irrelevant to the claim.
13        THE COURT:  Okay, well, again, let me be clear to
14  you because I don't know how long Judge McMahon will have me
15  supervising these disputes.  It needs to be clear what you
16  disagree on, and it shouldn't be I thought I made it clear,
17  it should be it's clear. I don't mind the parties
18  disagreeing, that's where my job comes in, but I mean
19  otherwise you get cases, you have to understand what this
20  looks like from this side of the bench. We have Judge
21  McMahon, she's involved, there's apparent dispute. She gets
22  another judicial officer involved for this apparent dispute.
23  If there is no real dispute, if all it means is
24  communications, you've saved the time of two judicial
25  officers and three weeks.
```

1                                              16

2          So if, in going forward, there is any question

3  about whether or not you have a meeting of the minds, you

4  need to make it explicit, because it's not my job to get you

5  to understand each other, it's my job to rule on your

6  disputes.

7          What else do you have? I mean, okay, so if there

8  are any, it seems that plaintiff's counsel isn't sure why

9  you did some of the redactions.  Okay, and what's going to

10 happen before, I mean I have other matters that I'm going to

11 take up, but before you leave this courthouse, I invite you

12 to go to my jury room or one of the conference rooms and

13 make sure that you have a meeting of the minds, that way you

14 can come back because I don't want to have to tell Judge

15 McMahon that we have to issue an order for you to do

16 something in the next 24 hours because she says well we have

17 a deadline and you've got to meet the deadline.  Because

18 that's what is going to happen for me. I'm not going to

19 change the deadline, I'm going to order you to do things on

20 an expedited basis.

21         What else is an apparent dispute, counsel?

22         MR. HARVIS:  Yes, Your Honor.  So of the, I don't

23 know if Your Honor is looking at our --

24         THE COURT:  I'm looking at.

25         MR. HARVIS:  Number 10 lists a number of files,

1

2  disciplinary files. Not all of them relate specifically to

3  detective Taylor, but a number of them do.  Of the files

4  that are listed there, I've only received one of them as of

5  today, and, you know, without those files, again, it's

6  difficult for me to conduct a fair deposition of the

7  officer. These are what the City has represented are

8  relevant disciplinary records and so we're at a loss to

9  understand why, I guess it's a couple of dozen of these have

10 not been produced.

11         MR. JOHNSON:  Your Honor, we sent about a dozen or

12 so disciplinary files to his office about two weeks ago.

13         THE COURT:  Did you get them?

14         MR. HARVIS:  I've gotten every production he's

15 sent, but we haven't gotten a single disciplinary file,

16 except for the one that I mentioned. What we got yesterday

17 evening were a few single page sheets related to, well, it's

18 unclear exactly what they relate to, they're certainly not

19 files, they're just -- and in some of the cases you can't

20 even tell even the most basic details of the event.

21         For example, I'm looking at one here and it says

22 the entire allegation is listed as improper search. That's

23 the level of detail that I'm given from this single page

24 document.

25         THE COURT:  Sounds more like a summary than a

```
 1                                                    18
 2   file, counsel.
 3          MR. JOHNSON:  I will check our files, but I --
 4          THE COURT:  Your understanding is you sent him the
 5   files?
 6          MR. JOHNSON:  Yeah, I sent him files. Some of them
 7   these guys are witnesses to, and they're not the targets of
 8   the investigation, but they were listed on their IABs. So
 9   that's why sometimes there's not much detail. Sometimes
10   there's one page, sometimes there's five pages, sometimes
11   there's a hundred pages, it's really hard to tell how big
12   the file will be when I get it.
13          THE COURT:  Okay.  But just to be clear, it's your
14   representation that you, as far as you know, you have given
15   him all the files that --
16          MR. JOHNSON:  Right. And I was never informed of
17   any deficiencies after I sent those files two weeks ago, I
18   would have corrected them to the extent I could have.
19          THE COURT:  Counsel, they must have looked
20   deficient when you got them?
21          MR. HARVIS:  Your Honor, so I had, on June 20th I
22   sent a letter to the Court listing out all of these files
23   that were overdue because we had conferred about them.
24          THE COURT:  Yes.
25          MR. HARVIS:  And I had let him know that they
```

hadn't been produced.  Not a single, with the exception of
one of these files, not one file has come to my office since
that time.

THE COURT:  Well, I understand, but he said he
sent you files two weeks ago and he also said I didn't get,
I mean let me back up so I can understand.  These numbers
that you have here, you got this from the City?

MR. HARVIS:  Yes, exactly, its from the officers'
disciplinary summaries.

THE COURT:  Okay, and so you asked for all the
files related to that, he said he sent you all the -- I
don't know whether he did or didn't, but he said he sent you
some files, how big was it, counsel?

MR. JOHNSON:  I don't know, maybe a hundred pages,
I can't remember at the time.

MR. HARVIS:  May I respond, Your Honor?  Yeah, so
I have a list here of everything we've received. And so what
we got two weeks ago was a single file, it was file number
10-09943, and actually, looking at my list, it's not even a
file that appears here on my list.

THE COURT:  Yeah, it's not on this list here.

MR. HARVIS:  No.  And so that's, so when he says
he's sent us all the files two weeks ago, he's referring to
one single file for one incident that does not appear on

1  this list.

2          MR. JOHNSON:  There were also --

3          MR. HARVIS:  And then last night, if I may just

4  finish.

5          MR. JOHNSON:  Yeah.

6          MR. HARVIS:  And then last night, yesterday

7  afternoon, was when I received this stack of maybe 20 pages

8  of single page documents that just say things like improper

9  search.

10         MR. JOHNSON:  I sent those, those papers were sent

11 two weeks ago. I sent a different production yesterday.

12         THE COURT:  Okay.  Okay, let's got to, what about

13 what's in 10, counsel, did you send these to the plaintiff?

14         MR. JOHNSON:  Yeah, I sent, I made the request for

15 the documents, I got a delivery of documents, I sent them in

16 two shipments, one was about a hundred pages, the other one

17 was about thirty pages.  The first one was sent around June

18 10th, the second one was sent around two weeks ago, I never

19 heard back from plaintiff's counsel.

20         THE COURT:  Okay, now, and you looked at it, and

21 it included these files?

22         MR. JOHNSON:  To the extent I could tell, yes.

23         THE COURT:  Well, you have a list of what you sent

24 him?

```
 1                                                    21
 2            MR. JOHNSON:  Yeah, I had the list of what we sent
 3  him. I don't have that on me, but I did send him a whole
 4  list of files.
 5            THE COURT:  And as far as your recollection is,
 6  there is nothing that is on this list that you failed to
 7  send him?
 8            MR. JOHNSON:  If there was missing files from it,
 9  I would have appreciated to hear from plaintiff's counsel.
10            THE COURT:  Well, that's all well and good to
11  appreciate to hear from him, but if, for example, if he
12  asked for 11-26745, either you sent it to him or you didn't.
13            MR. JOHNSON:  I'm pretty sure I sent that one.
14            THE COURT:  Okay, because I mean I'm perfectly
15  willing to say, look, if you're the person who is supposed
16  to receive files, you say, all right, I didn't get the stuff
17  on my list, and believe me, I have some cases in which, you
18  know, it gets there a hot minute and they're already making
19  a motion to compel. But it's also true that I expect a
20  similar obligation on the part of the person sending it.
21  That is if you got a list from the other side and it had a
22  list of 15 things, if you didn't send him all 15, I would
23  expect the cover letter to say here's what's in this, and he
24  would see right way what's not in it.
25            There seems to be a little bit of miscommunication
```

1

2  here, and but I'll leave it this way. The plaintiff raised

3  some questions about not receiving some files, I have not

4  seen any reason why they should not be produced, so in

5  essence, the burden still is on the defendant to produce it.

6          MR. JOHNSON:  Yes.

7          THE COURT:  Now, if you say that you've sent it to

8  him and you have some transmittal letter, and for some

9  reason he hasn't received it, then you send it again, or you

10 give it to him again.  But, again, before you leave here

11 today, I want to -- you don't have your letter though, do

12 you?

13         MR. JOHNSON:  No, I don't have it on me, I'm

14 sorry.

15         THE COURT:  Can you call somebody?

16         MR. JOHNSON:  Probably not, sorry, but it's on my

17 computer.

18         THE COURT:  Okay.  I don't expect this to linger,

19 but you're saying that you can't find, for example, do you

20 remember from your transmittal letter you indicated what

21 files were in it?

22         MR. JOHNSON:  I can't remember, Your Honor, but I

23 can confer with counsel and we can figure out what he, and I

24 can see what I sent.

25         THE COURT:  But you did not withhold anything --

```
 1                                                      23
 2            MR. JOHNSON:  No, I didn't withhold anything.  I
 3  did not withhold anything.
 4            THE COURT:  Well, there seemed to be no objection,
 5  at least, from defense counsel, so I assume that in some
 6  manner, shape or form he'll make sure you get this before,
 7  I'll give you -- first of all, the stuff with respect to
 8  Taylor is problematic because Taylor is deposed tomorrow
 9  morning?
10            MR. HARVIS:  Yes, Your Honor.
11            THE COURT:  Do you know which of these refer to
12  Taylor?
13            MR. HARVIS:  I can figure that out very easily,
14  Your Honor.
15            THE COURT:  Okay.  Well, you will endeavor to get
16  anything related to Taylor by the end of the day.  And the
17  others by tomorrow at noon.  And can you check your office
18  to see if they were sent?
19            MR. HARVIS:  Yes, Your Honor, absolutely. I mean
20  if I could just say, I mean I've kept meticulous records of
21  the documents we've received and I am someone who has a
22  particular familiarity with the files and sort of the way
23  they work. And so I can represent to the Court that as to
24  the documents that are listed here, there is one single file
25  that we've received and that's it.  So I'm deeply concerned
```

1                                                        24

2   about the representations that are being made today.

3           MR. JOHNSON:  Did you not get any CCRB files, Mr.

4   Harvis, those were also on the list.

5           THE COURT:  Hold it, counsel, counsel.

6           MR. JOHNSON:  Okay, sorry.

7           THE COURT:  We don't have conversations between

8   lawyers.

9           MR. JOHNSON:  Sorry.

10          THE COURT:  Okay.  If you have a point to make,

11  I'll give you time to make it.  Finish, counsel.

12          MR. HARVIS:  I just wanted to say, Your Honor,

13  that I am deeply concerned. You know, I don't have any

14  problem with the fact that some things may be overdue and

15  things may take more time, but to suggest that all of these

16  files have been produced when we've only received a single

17  file that I don't even think was on this list, I'm concerned

18  about it. And so, you know, it may be the subject of a

19  further letter to the Court once we get to the bottom of it.

20          THE COURT:  Well, it will be a letter, it will be

21  the subject of defense counsel explaining to me why I should

22  not take further actions to misrepresentations to the Court.

23          MR. JOHNSON:  Your Honor, I just want to say for

24  the record that this conference could have been avoided with

25  better communication between plaintiff's counsel and defense

25

counsel. I don't think there's really any disputes, but

there is just, to the extent that plaintiff's counsel needs

some documents and defense counsel doesn't have an objection

to them, we tried to get all the files as soon as we can and

if there was something missing we would have appreciated

knowing that, but --

THE COURT:  Well --

MR. JOHNSON:  You know, I mean I just feel like,

you know, we had three weeks, I haven't really heard from

plaintiff's counsel, I've been trying to produce documents

to him. I produced documents to him yesterday, I produced

documents two weeks ago.  We've been planning depositions.

So to the extent that, you know, plaintiff's counsel wants

to be here today, that's fine, but I just feel like it's

just --

THE COURT:  Well, I don't deal with feelings.

MR. JOHNSON:  Yeah, I know, sorry.

THE COURT:  All I'm concerned with is plaintiff's

counsel wrote a letter to Judge McMahon, said I didn't get

these things from the defendant. It seems to me, at that

point, unless the defendant has a viable claim that the

information should not be produced, there is a burden on the

defendant as the party who is supposed to be producing it to

make sure that the plaintiff got the information.

1

2          Life is a two-way street.

3          MR. JOHNSON:  No, I understand.

4          THE COURT:  So that, for example, you are saying I

5    didn't hear anything from plaintiff about not getting the

6    documents.  Someone might ask, well, did you call the

7    plaintiff and say did you get it, you see how those things

8    work?

9          MR. JOHNSON:  No, I understand, Your Honor.

10         THE COURT:  You know, in relationships,

11   communication is a two-way street.

12         MR. JOHNSON:  I agree, Your Honor.  Also, a lot of

13   CCRB files are referred to IAB files, and so forth, so

14   there's a lot of duplication in the numbers.  The numbers

15   don't necessarily reflect what exactly, which documents are

16   actually outstanding because some of them were referred to

17   CCRB. So I will cross-check to make sure that there are --

18         THE COURT:  And let there be no mistake, my point

19   is, is that this is a dispute that was brought to Judge

20   McMahon, the plaintiff pointed out some things that they did

21   not receive.  You don't, you have not presented to me any

22   reason under the rules that they should not have been

23   produced, and, therefore, you're responsible for making sure

24   that it happens.

25         MR. JOHNSON:  Okay.

1                                                              27

2          THE COURT:  And so you will talk with the

3  plaintiff, you will find out if you sent him something, if

4  he didn't get it, but as far as I'm concerned, he's pointed

5  out a list of documents and file numbers, they appear to be

6  relevant and, you know, it's been three weeks. I assume that

7  if they haven't been produced they are going to be produced

8  in short order.

9          So what we'll consider this is I'm ordering all of

10  these to be produced no later than noon tomorrow. If you've

11  already sent them, then you've already complied.  Doesn't

12  that make it simpler?

13          MR. JOHNSON:  Yes.

14          THE COURT:  And for plaintiff, you're okay with

15  that?

16          MR. HARVIS:  That's fine, Your Honor, thank you.

17          THE COURT:  Okay, but again, you know, I don't

18  know whether he sent it. I don't know whether or not there's

19  something with the numbers and CCRB files and NYPD files, it

20  may be some things, maybe they were only witnesses and

21  there's only one page, I don't know. But the rule is, the

22  ruling is that these are ordered to be produced, I can't be

23  any clearer than that.

24          MR. HARVIS:  Just to make it slightly clearer,

25  Your Honor, you're referring to the files, correct, Your

1

2  Honor, not the summaries?

3          THE COURT:  I'm talking about the files.

4          MR. JOHNSON:  Yes, the underlying files, Your

5  Honor, that's right.

6          THE COURT:  That's right.

7          MR. JOHNSON:  The documents.

8          THE COURT:  Okay, next.  What's your next problem?

9          MR. HARVIS:  We just have two more quick issues,

10  Your Honor, I'll try to make them quick.  One is the

11  substantive responses to certain of our interrogatories. And

12  I just summarized them in the letter, I didn't want to waste

13  the Court's time spelling them out. But basically they seek

14  information about the defendants regarding their prior

15  discipline by the NYPD, when they've been disciplined.

16  Whether or not a Court has ever ruled their testimony to be

17  unworthy of belief or deemed them incredible.  And whether

18  or not they have ever been arrested for a crime of

19  dishonesty or a felony, basically crimen falsi.

20          THE COURT:  This is for the officers?

21          MR. HARVIS:  For the defendant officers, yes, Your

22  Honor.  And so we didn't receive any substantive responses,

23  we only received objections to those interrogatories.

24          THE COURT:  What's the objection?

25          MR. JOHNSON:  Oh, well, there's, we produced

29

1

2   yesterday relevant documents to whether or not, to some of

3   these questions, otherwise there's, you know, the defendants

4   haven't been arrested, you know, they've never --

5            THE COURT:  Well what's the objection?  Is there

6   an objection?

7            MR. JOHNSON:  Well, the objection -- well, I mean

8   there's no objection because if they were convicted of a

9   crime or arrested we would disclose that.

10           THE COURT:  Okay, so basically your representation

11  here is that as to number X1 --

12           MR. JOHNSON:  Which one, go through them and I

13  will --

14           THE COURT:  I'm sorry, number 11.

15           MR. JOHNSON:  Which one is that one?

16           MR. HARVIS:  Number 11 of our June 20th letter, oh,

17  I'm sorry, it's interrogatories 5 through 9.

18           THE COURT:  And 16 to 17.

19           MR. JOHNSON:  Okay.

20           THE COURT:  I mean it seemed relevant --

21           MR. JOHNSON:  Yeah, I mean we did produce two

22  court cases that are relevant to this matter, regarding one

23  of the defendant officers in our disclosures yesterday.

24           THE COURT:  Did you get it?

25           MR. HARVIS:  So what we got yesterday as to one of

1
2   the five defendants, we got two decisions from the Court.
3   There was nothing explaining, no supplement that explained
4   what they were or what proceeding they were in, and no
5   indication that there was no documents as to the other four
6   defendants, it was just simply portions of two court
7   opinions in which one defendant was deemed incredible. So we
8   believe that response is insufficient.
9           THE COURT:  You mean insufficient because it
10  didn't say anything about the other four?
11          MR. HARVIS:  Exactly, we just want to know if
12  there is, if the representation is that that's all that
13  there is.
14          THE COURT:  There's a representation that's all
15  there is, isn't there, counsel?
16          MR. JOHNSON:  Yes, that's all there is. And then
17  to the extent that we found documents relevant to that
18  interrogatory, we produced those documents. I apologize for
19  not saying which Court and one was an oral decision, one was
20  a written decision in New York Supreme Court, and as soon as
21  I found out about them I disclosed them to plaintiff's
22  counsel.
23          THE COURT:  Okay, but basically nothing for the
24  other four, and as to the one, you produced the, I don't
25  know exactly what you say in your interrogatories, but you

1
2  have the decisions --

3          MR. JOHNSON:  Yes.

4          MR. HARVIS:  The interrogatory at issue asked

5  whether or not a court or tribunal has ever deemed the

6  officer's testimony to be unworthy of belief or incredible,

7  like at a suppression hearing, Your Honor.

8          THE COURT:  Okay, so he sent you two decisions.

9          MR. HARVIS:  That's right.

10          MR. JOHNSON:  What more do you want?

11          MR. HARVIS:  Well the actual written response to

12  the interrogatory was just an objection, there was no

13  substantive response.  So I understand he's now telling me

14  that basically there is nothing for anyone else and this is

15  all there is for that one defendant.

16          THE COURT:  Right.

17          MR. HARVIS:  I just want an answer under Rule 33

18  so that later on in the proceeding I have that committed to

19  writing and it's not just here at the conference.

20          THE COURT:  Okay, you two can work out the

21  supplementals. I mean he's made the representation here, I

22  assume there is no problem in making sure that there's a

23  supplemental response to the interrogatories.

24          MR. JOHNSON:  Yeah.

25          THE COURT:  Making it clear that there are no

1

2  further responses.

3          MR. HARVIS:  Thank you, Your Honor. And then there

4  are just two other issues. One is that --

5          THE COURT:  You said two the last time.

6          MR. HARVIS:  Well, I know, but this kind of

7  brought up another one, so I'm counting it.  But if Your

8  Honor wants to cut me off you're welcome to obviously.  So

9  and this is, we only got these documents yesterday, so

10  that's why I'm sorry I'm raising it, it's a little bit,

11  maybe we should -- withdrawn.  We'll discuss this and if

12  there's an issue I'll raise it with the Court because it's

13  first impression right now.

14          There was one document request which goes back to

15  the issue of the privilege log that we did not receive a

16  response to, and that's our request for emails and text

17  messages between the officers for any responsive emails and

18  text messages.  The only reason it's not in our letter, Your

19  Honor, is because the defendants actually did not respond.

20  What they did was we ask it in our document request number 6

21  whether or not there were any relevant emails, and in

22  response to document request number 6, the defendants

23  reprinted a different document request.  So I wasn't aware

24  of that mistake until I was reviewing them just now. But

25  instead of reprinting our request for emails and texts, they

1

2  list the request as all vouchers concerning any items in

3  plaintiff's possession, which doesn't appear in our demands.

4       THE COURT:  Well, again, this falls into category

5  of we're not sure because there's a mistake.  Were there any

6  responsive emails?

7       MR. JOHNSON:  Upon information and belief at this

8  time, we don't believe there are any emails or photographs

9  or text messages made. If there were, I would have disclosed

10  them. I mean --

11       THE COURT:  What do -- plaintiff?

12       MR. HARVIS:  So here's my concern, Your Honor, so

13  it seems like they weren't even aware that this request was

14  being made. So now I'm going to go to the deposition --

15       THE COURT:  I don't know, did you know that --

16       MR. JOHNSON:  No, I was aware of this request, I

17  obviously made a mistake in the discovery responses.  It's a

18  standard question to ask the defendant officers if they had

19  any emails, or text messages, or photographs that they took

20  at the scene and if those --

21       THE COURT:  Again, you can work this out, you'll

22  do a response that indicates that there are no responsive

23  emails.

24       MR. HARVIS:  My concern, Your Honor, is just that

25  tomorrow at Detective Taylor's deposition I'm sure the

question will be were you instructed to search through your

emails and look for responsive documents, and I just have an

expectation that the answer to that question is going to be

no.

         MR. JOHNSON:  I think the question you can ask

easily is do you have any emails.

         THE COURT:  If the answer is no, then you can come

back and --

         MR. HARVIS:  That seems reasonable.

         THE COURT:  We'll fix that.

         MR. JOHNSON:  I mean to the extent that, I will

represent I have talked to Detective Taylor, asked if he has

any emails or text messages, I can add, or anything

regarding the case --

         THE COURT:  Well, see, my standard way of dealing

with these kind of situations is if he asks a fair question

about whether or not he searched for emails and there's been

a representation that there are no emails, then we'll fix

the email thing and then he'll come back and he'll be

deposed.

         MR. JOHNSON:  I don't understand, sorry, Your

Honor, what did you say?

         THE COURT:  Well, if, for example, he asks were

you asked to search for any emails and he says, no, nobody

35

ever said that to me, then you're going to ask, he'll be

asked to search for emails. If he finds any emails, he'll

come back and he'll testify about the emails.

        MR. JOHNSON:  That's fine.

        MR. HARVIS:  That's it for me, Your Honor, that's

everything.

        THE COURT:  You got any problems?

        MR. JOHNSON:  No, Your Honor.

        THE COURT:  Obviously, we all have problems.

        MR. JOHNSON:  Yes.

        THE COURT:  But any problems with the discovery

issues.

        MR. JOHNSON:  Um-hmm.

        THE COURT:  So you're going to meet Judge

McMahon's deadline?

        MR. JOHNSON:  I will write the Court if there's a

problem.

        THE COURT:  She doesn't look favorably upon --

        MR. JOHNSON:  No, I understand, Your Honor. It's

just that I don't know what the size of the files are, so to

the extent that I have documents, that's what I have.  I

don't know if there's one page or twenty pages. So, for

example, in a Civilian Complaint Review Board file I know

exactly how many pages there are generally, and for their

1

2  report.  For IAB or the, any precinct level investigation,

3  usually it's minimal paperwork at best.

4        THE COURT:  Well, you know, to some extent I feel

5  your pain, although you've had ample time --

6        MR. JOHNSON:  No, I understand, Your Honor, I know

7  what you're saying.

8        THE COURT:  You've had ample time to inquire about

9  this.

10        MR. JOHNSON:  No, I did inquire and I will see

11  what is --

12        THE COURT:  You know, if three weeks, four weeks

13  down the road you find out that it's a thousand pages and

14  you thought it was a hundred, that's on you, you should have

15  found that out a while ago.

16        MR. JOHNSON:  No, Your Honor.

17        THE COURT:  So, you know, you may have to use a

18  little more, if it turns out that it's more than you

19  anticipated, then I'm sure there are enough hours in the day

20  to fix that.

21        MR. JOHNSON:  Yes, Your Honor.

22        THE COURT:  If there's nothing further, I

23  appreciate that, I think the referral was for discovery

24  disputes, that means any reasonable follow-up on the things

25  that we've talked about, you bring those to me, not to Judge

1
2  McMahon, and you bring them to me immediately.  You still

3  need to talk before you leave though because I want to make

4  sure that, you know, you have access to a judicial officer,

5  give you an incentive to have a fruitful conversation. But

6  we'll be adjourned officially.

7           MR. HARVIS:  Your Honor, just one more thing, I'm

8  sorry, before we go, I'm just thinking practically. Mr.

9  Harris is incarcerated here at the Manhattan Detention

10  Center, so if I'm going to make it to bring him this

11  photograph before the deposition tomorrow, I just want to

12  make sure that I have enough time to actually do that.  Is

13  there anyway we could set a deadline like of, say, 2:30 this

14  afternoon for me to get the photograph, so that I can --

15           THE COURT:  Well I thought it was in his office.

16           MR. JOHNSON:  I think I have it in my office, so I

17  can --

18           THE COURT:  You can follow him to his office and

19  get it.

20           MR. HARVIS:  But we have a deposition on another

21  case actually --

22           MR. JOHNSON:  Or I could just email it to him. I

23  have a deposition at noon with him.

24           THE COURT:  You can figure out how to, I mean it

25  was my intention that it be done as soon as he got back to

                                                          38

 1

 2  his office.

 3          MR. JOHNSON:  I think I have Detective Taylor, the

 4  other officers, I have to get the other officers pictures.

 5          THE COURT:  Okay, but I mean basically you're

 6  saying that if you don't have it by 2:30 it's going to

 7  create a problem, but what time is it now, it's only 11:25,

 8  that's 3 hours.

 9          MR. HARVIS:  We have a deposition together at noon

10  on another case, Mr. Johnson and I, so I'm just trying to

11  fit everything in, but --

12          THE COURT:  Okay, you all figure out how to do it.

13          MR. HARVIS:  I'll make it work.

14          THE COURT:  You better talk quick right now

15  though.  Okay, we're adjourned, thank you.

16          MR. HARVIS:  Thank you, Your Honor.

17          MR. JOHNSON:  Thank you.

18              (Whereupon the matter is adjourned.)

19

20

21

22

23

24

25

1                                                           39

2

3                        C E R T I F I C A T E

4

5          I, Carole Ludwig, certify that the foregoing

6    transcript of proceedings in the United States District

7    Court, Southern District of New York, Harris versus City of

8    New York, et al., Docket #15cv8456, was prepared using PC-

9    based transcription software and is a true and accurate

10   record of the proceedings.

11

12

13

14

15   Signature_____

16

17   Date:  August 18, 2017

18

19

20

21

22

23

24

25